CASE 50—ACTION BY NORTON IRON WORKS V. THE BATES MACHINE
COMPANY TO RECOVER DAMAGES FOR BREACH OF CONTRACT.—
MAY 20.

# Bates Machine Co. v. Norton Iron Works.

### APPEAL FROM BOYD CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. AFFIRMED.

ATTACHMENT—NON-RESIDENTS—SITUS OF DEBTS—THREATENED REMOV-
AL—CONTRACT TO FURNISH MANUFACTURING MACHINE—BREACH—
MEASURE OF DAMAGES—PROSPECTIVE PROFITS.

Held:   1. Under Civ. Code Prac., section 194, an attachment may is-
sue against a foreign corporation or a non-resident defendant
for any cause that would authorize an attachment against a resi-
dent defendant, and also on the ground of non-residence alone
if the action be on a contract or on a judgment or award.

2. A debt is property at the residence of the debtor, and therefore,
where the debtor is a resident of the State, the fact that the
debt is about to be collected by him, and the money re-
moved from the State, not leaving enough property to satisfy
plaintiff's claim against him is sufficient to entitle plain-
tiff to an attachment against him, though he be a non-resident,
under Civ. Code Prac. section 194, subsection 6, authorizing
an attachment against a defendant who is about to remove, or
has removed, his property from the State, not leaving enough
to satisfy plaintiff's claim.

3. Inability to perform a contract is never a defense to an action
for a breach of the contract unless that inability amounts to
an impossibility; and therefore the fact that defendant, after
contracting to furnish plaintiff machines to manufacture wire
nails, discovered that his machine would not make nails with
such speed as to be profitable, does not relieve defendant from
liability for breach of the contract, as machines are made that
will manufacture wire nails.

4. As plaintiff was unable, after defendant refused to furnish the
machines, to procure them from others, the measure of dam-
ages is the profits lost by plaintiff by reason of his inability to
supply his customers with the nails he could have made if
the machines had been furnished, such profits being within the
contemplation of the parties when the contract was made.

Bates Machine Co. v. Norton Iron Works.

WILLIAM CROMWELL, FOR APPELLANT.

Appellant is a non-resident corporation, having its principal place of business at Joliet, Illinois, and appellee is a corporation having its principal place of business at Ashland, Kentucky.

Appellee was, in 1896, engaged in the manufacture of cut nails, and ordered ten wire nail machines from appellant for the purpose of embarking in the new enterprise of manufacturing and selling wire nails.

Appellee sues for $2,000 damages which it alleges it suffered by reason of a breach of contract by appellant in failing to furnish the ten wire nail machines according to contract.

The question to be determined on this appeal is, whether the appellee can recover prospective profits as damages for the alleged breach of contract.

A motion was made in the lower court to discharge the attachment which appellee had obtained, on the ground that no attachment could issue where the indebtedness was unliquidated damages, which motion was overruled by the court.

We insist that the court erred in overruling said motion.

We contend that the prospective profits, recovered by the appellee in this case, were too remote, prospective and speculative to be estimated.

Instruction No. 2 given by the court as the basis for measuring damages, makes no distinction between profits that might arise from an old established business, and from a new business.

It bases appellee's right to a recovery on the broad ground that the manufacture and sale of wire nails at a profit, was in the contemplation of the parties at the time, regardless of any question as to uncertainty or vagueness of measuring any damages at all.

We contend that if there was anything in the mind of the buyer at the time of making the contract, it was as to what profits he might realize during the life of the machine, not to take out of that time a mere segment, extending from May 20, 1896 to January 1, 1897.

One of the defenses relied on by appellant is, that it was impossible by mechanical skill to correct the construction of the machine purchased by appellee so as to accomplish the purposes contemplated by both parties. The proof showing the defects in the machine and the impossibility to correct same is uncontroverted and we claim the doctrine of release from contracts by reason of impossibility to perform same, is clearly recognized by the authorities.

If the instructions were wrong, and incompetent evidence was introduced, then the finding of the jury was wrong as we insist

Bates Machine Co. v. Norton Iron Works.

was the case, and the court erred in not giving a peremptory instruction to find for the appellant.

## AUTHORITIES.

1. Attachment for unliquidated damages. Drake on Attachment, sec. 23; Civil Code of Prac. subsec. 4, sec. 196; Hachstadder, &c. v. Sam, 11 S. W. Rep., 408; Warwick v. Chase, 23 Md., 161.

2. Prospective profits. Sedgwick on Damages, sec. 183; Blue Grass Cordage Co. v. Luthy & Co., 17 Ky. Law Rep., 1127; Mitchell v. Cornell, 44 N. Y. Sup. Ct., 401; McDaniel v. Crabtree, 21 Ark., 431; Sledge v. Reid, 73 N. C., 440; Cundiff v. Cundiff, 13 Ky. Law Rep., 1060; Smith v. Phillips, Jr., 16 Ky. Law Rep., 616; Howard v. Stillwell and Bierce Manufacturing Co., 139 U. S., 199; Pennypacker v. Jones, 106 Penn. State, 237, 242; Paola Gas Co. v. Paola Glass Co., 54 Amer. State Rep., 601; Alamo Mills Co. v. Hercules Iron Co., 22 S. W., 1099; Benton v. Fay & Co., 64 Ill., 422; Freeman v. Clute, 3 Barbour, 427; McKinion v. McEwen, 48 Mich., 106.

3. Impossibility of perfecting machine. 2 Chitty on Contracts, p. 73; Wald's Pollock on Contracts, p. 370; Muhlenburg, &c. v. Henning, &c., 9 Atlantic Rep., 144; Bell v. Truitt, 9 Bush, 257; Beatty v. Scrivener, 3 Mon., 140; Switzer v. Pinconning Mfg. Co., 59 Mich., 497; Owensboro Telephone Co. v. Wisdom, 23 R., 98; Denhard v. Herst & Rogers, 23 R., 793; The Hauser Brenner & Fath. Co. v. Tate & Co., 20 R., 1718.

HAGER & STEWART, ATTORNEYS FOR APPELLEE.

1. Impossibility of performance of contract on the part of appellant not made out in fact, or supported by law. A contractor can not plead his own inability to perform a contract entered into in defense of an action for damages for failure to perform. Beatty, &c. v. Scrivener, 3 Monroe, 140; Bohannons v. Lewis, Ibid, 377; Leavitt v. Dover, 32 Atl. Rep., 156; Switzer v. Pinconning Mfg. Co., 59 Mich., 497; Dewey v. Union School District, 42 Mich., 480; Benjamin on Sales, 4th ed., sec. 570; and notes; 1 Beach on Modern Law of Contracts, sec. 237; Shanks v. Griffin, 14 B. M., 153; Ingle. Exr. of Dermott v. Jones, 2 Wall (U. S.) 1.

2. Measure of damages. The profits sued for were reasonably certain, and action therefor sustainable. Allison v. Chandler, 11 Mich., 542; Vol. 1, Sedgwick on Damages, sec. 177; Erie C. & I. W. Co. v. Barber, 106 Pa., 125; Chapman v. Kirby, 49 Ill., 211-219; Blue Grass Cordage Co. v. Luthey, 28 Ky. Law Rep., 583; Owensboro Tel. Co. v. Wisdom, 23 Ky. Law Rep., 97; Newmarket Co. v. Embry Co., 20 Ky. Law Rep., 1130.

3. Under subdivision 8, section 194, Civil Code, attachment for unliquidated damages is sustainable. Drake on Attachments, Secs. 13, 13a, 15, 16, 17, 18, 20, 21; Pennsylvania Railroad Co. v. Peebles, 3 Ohio State, 537.

OPINION OF THE COURT BY JUDGE WHITE—AFFIRMING.

This is an action for damages arising from a breach of contract by appellant, Bates Machine Company, to furnish to appellee, Norton Iron Works, machines to manufacture wire nails. Appellant is a foreign corporation, and when the action was filed an attachment was sued out, and the Ashland Steel Company was summoned as garnishee. That company answered, admitting an indebtedness of $2,500, which was ordered to be paid into court. The appellant filed its answer, admitting the contract, and failure to deliver the machines contracted for, but pleads that such nonperformance was because of impossibility; that is, that the machines contracted for were to be used in the manufacture of wire nails, and that, after the contract was entered into, appellant discovered that the machine would not make nails with such speed as to be profitable, and that for that reason appellant declined to make the machines, not being able to remedy the defect. This is practically the only defense offered. Appellant moved to discharge the attachment on the ground that there could be no attachment on a claim of unliquidated damages. This motion was overruled, and a trial was had resulting in a verdict and judgment for $2,000. After reasons and motion for new trial had been overruled, this appeal is prosecuted.

Counsel urges, as a reason for reversal, the action of the court in refusing to instruct the jury to find for defendant if they should believe that the machine was so defective, either in plan or construction, that it was impos-

sible for defendant, by the exercise of all the mechanical
skill it possessed, or could obtain, to remedy so as to man-
ufacture wire nails in such quantities and with such speed
and of such quality as would sell readily on the market.
As a further ground of reversal, complaint is made of the
criterion of damage by which the jury were authorized to
fix its verdict. The instruction reads: "If the jury be-
lieve from the evidence, on and prior to the 20th day of
May, 1896, the plaintiff was engaged in the business of
manufacturing and selling nails, had a plant with need-
ful power and appliances to operate wire-nail machines in
its said business, and a demand in its business for wire
nails, such as the plaintiff in the use of wire-nail machines
could manufacture and sell, and that the defendant knew
these facts; and shall further believe from the evidence
that the plaintiff, on being advised that defendant could
not, or would not, make or deliver the said wire-nail ma-
chines, and the plaintiff, by the use of diligence, was unable
to purchase machines of like character and description
in the market, with which to manufacture wire nails, and
the defendant knew at the time of the purchase by the
plaintiff that it purchased the machines with the view
to their use in the manufacture of wire nails, and for
sale of such nails at a profit, and such was in the con-
templation of the parties at the time; and shall further
believe from the evidence that, from the use of the said ma-
chines, the plaintiff could and would have realized a profit
in the manufacture and sale of wire nails made with said
machines, then such profit, if any, in an amount not ex-
ceeding $2,000, is the damage, if any, they shall find for
the plaintiff under instruction No. 1." Further complaint
is made of the refusal to discharge the attachment on the
face of the pleadings. The grounds of attachment set

out in the affidavit therefor are: Nonresidency, and that "defendant Bates Machine Co. is about to remove its property, to-wit, money and credits due it in this State, out of this State, not leaving enough therein to satisfy plaintiff's claim in suit herein.". Section 194 of the Civil Code of Practice provides: "The plaintiff may . . . have an attachment against the property of the defendant, including garnishees as provided in section 227. . . . In an action for the recovery of money against (1) a defendant, who is a foreign corporation or nonresident of the State; or . . . (6) is about to remove, or has removed his property, or a material part thereof, out of this State, not leaving enough therein to satisfy the plaintiff's claim, or the claims of said defendant's creditors; or . . . (8) . . . But an attachment shall not be granted on the ground that the defendant is a foreign corporation or a non-resident of the State, for any claim other than a debt or demand arising upon a contract, express or implied, or a judgment or award." There are two grounds set up for the attachment,—the one of nonresidency, and the other under subsection 6. The affidavit states all facts requisite to obtain an attachment, unless it is prohibited by the clause quoted in subsection 8.

By a careful study of section 194, we conclude that an attachment may issue against a foreign corporation or a nonresident defendant for any reason that would justify an attachment against a resident defendant. That is, an attachment may be had against a foreign corporation or a nonresident defendant, if he is about to remove or has removed his property out of the State, not leaving enough to satisfy plaintiff's claim, as provided in subsection 6; or if he has sold, conveyed or otherwise disposed of his prop-

erty, with fraudulent intent to cheat, hinder or delay his creditors, as provided by subsection 7; or is about to so sell, convey or dispose of his property, as provided by subsection 8. In these cases an attachment may issue in an action for the recovery of money, regardless of whether it be claimed, for one reason or another, and also independent of the fact of citizenship of the defendant. But as against a foreign corporation or a nonresident, the fact of nonresidency alone authorizes an attachment, if the action be on a contract, or on a judgment or award. If the action against a nonresident or foreign corporation be not upon a contract, judgment, or award, there must be some ground stated that would justify an attachment against a resident defendant, or else it will not issue. In this case there is a ground stated that would justify an attachment against a resident defendant, if it be that money and credits due a foreign corporation by a debtor resident in this state has a situs here that can be removed out of this State. The property that is stated to be in this State, and which the defendant is about to remove, is money and credits due it in this State. In the case of Railroad Co. v. Sturn, 174 U. S., 710, 19 Sup. Ct., 797, 43 L. Ed., 1144, the supreme court held, after a careful review of the authorities, that a debt is property at the residence of the debtor, and was subject to attachment there. The court said: "The primary proposition [of counsel] is that the situs of a debt is at the domicile of a creditor, or, to state it negatively, it is not at the domicile of the debtor. The proposition is supported by some cases; it is opposed by others. Its error proceeds, as we conceive, from confounding debt and credit, rights and remedies. The right of a creditor and the obligation of a debtor are correlative, but different, things, and the law, in adopting its remedies for or against

either, must regard that difference. Of this there are many illustrations, and a proper and accurate attention to it avoids misunderstanding. This court said, by Justice Gray, in Wyman v. Halstead, 109 U. S., 654, 656, 3 Sup. Ct., 417, 418, 27 L. Ed., 1068: 'The general rule of law is well settled that for the purpose of founding administration all simple-contract debts are assets at the domicile of the debtor.' And this is not because of defective title in the creditor or in his administrator, but because the policy of the state of the debtor requires it to protect home creditors. Wilkins v. Ellett, 9 Wall., 740, 19 L. Ed., 586; Id., 108 U. S., 256, 2 Sup. Ct., 641, 27 L. Ed., 718. Debts can not be assets at the domicile of the debtor if their locality is fixed at the domicile of the creditor, and if the policy of the State of the debtor can protect home creditors through administration proceedings, the same policy can protect home creditors through attachment proceedings." This case was approved and applied in the cases of King v. Cross, 175 U. S., 396, 20 Sup. Ct., 131, 44 L. Ed., 211, and in the very recent case of Rothschild v. Knight (decided March 3, 1902), 22 Sup. Ct., 391, 40 L. Ed.,—. A full discussion of the question is found in section 125, Minor, Confl. Laws. We conclude therefore, that the grounds stated in the affidavit for attachment are sufficient to warrant its issual; that is, that the defendant was about to remove its property which was then in this State, without the State, not leaving sufficient to satisfy plaintiff's claim. There was, therefore, no error in refusing to discharge the attachment.

The instructions asked by appellant, and which the court refused, and of which action complaint is made, in effect told the jury that appellant would not be liable for a breach of contract it was unable to fulfil. These instruc-

tions did not say that there was no liability if the contract was impossible of performance. This was not the contention of appellant. It is well known that machines are made that will manufacture wire nails. This is not denied. But appellant says, "My machine will not make nails, or is not a practical machine for making wire nails, and I can not remedy the defect; therefore I will disregard my contract to furnish wire-nail machines." The answer to this by the law is that you must pay the damages resulting from your breach of contract. If the contract was impossible of performance by any person, the case might be different. Inability to perform is never a defense to an action for a breach of contract, unless that inability amounts to an impossibility. There was no error in refusing the instructions offered.

The remaining question is the measure of damages. This state of facts is presented: Appellee was in business, and, among other things, engaged in making cut nails, which were sold on the market, and to jobbers and wholesale dealers. The customers of appellee were asking about wire nails, and were offering to buy wire nails. Appellee could not furnish such nails, because it did not have the machines to make wire nails. Under these circumstances the contract was made with appellant to furnish machines to make wire nails. After the contract was made and appellee had purchased wire and prepared to make wire nails, appellant refused to furnish the machines, and appellee's customers purchased wire nails of other dealers. There is no claim for damage for loss in materials bought by appellee, but the claim is for profits necessarily lost by a failure to have the wire-nail machines to make the wire nails. It is shown that when appellant refused to comply with its contract the appellee was then unable to purchase wire-

nail machines from any other person; caused, possibly, by a combination of the nail makers. It is thus evident that appellee's position is not so advantageous in its business relation as it would have been if the wire-nail machines had been furnished according to contract. Appellee has been injured because of appellant's failure to comply with the contract. What is the criterion of recovery? Appellee insists that it is the reasonable profits it would have made out of the wire-nail business. This theory the trial court held to be the law. Appellant insists that this measure of recovery is too uncertain and indefinite. In the case of Cordage Co. v. Luthy, 98 Ky., 586 (17 R., 1126) (33 S. W., 835), this court approved an instruction which authorized the jury to fix the damages by the profits that Luthy & Co. would have made in the resale of twine. The instruction told the jury that if by the use of reasonable diligence appellee (Luthy) were unable to purchase twine of the same character and description in the market, and if the defendants (Cordage Co.) knew at the time of purchase by plaintiffs that they purchased same with a view to a resale, and that the profits anticipated thereon were, in the contemplation of both parties, the motive which induced plaintiffs to make the purchase, then the measure of damages is the difference between the contract price of the twine, plus the freight thereon, and the price at which it could have been sold for by plaintiffs at their place of business. In short, the recovery was authorized for the profits that could have been made on a resale. This same rule was laid down in New Market Co. v. Embry (20 R., 1130) 48 S. W., 980, where the contract broken was a failure to furnish slop to feed cattle. The measure of damage was the profits that would have been made in fattening the cattle. In the case of Telephone Co. v. Wisdom (23 R., 97)

(62 S. W., 529,) the court said where there was a breach of contract to furnish telephone service as agreed: "As a matter of law, there is, I think, no doubt that the plaintiff may recover prospective profits for the whole contract period. In other words, he is entitled to the full benefit of his contract. But the difficulty is, and ever must be in cases of this kind, to reach this value with reasonable approximate certainty. This damage, in the very nature of the case, must be more or less speculative and uncertain, and this must be known to the parties to such contracts. And, while such damages are recoverable, any verdict or judgment for such damage must be based on existing facts." Other cases might be cited, but these recent cases are sufficient to show that where profits from a resale, or from the use of an article contracted for, are in contemplation of the parties, and induce the contract to be made, such profits are to be considered as the measure of damage for a breach of that contract. In the case at bar it is clearly shown that appellee wanted the machines to manufacture wire nails to sell to the trade, and that when appellant failed or refused to supply the machines the appellee was unable to buy such machines elsewhere. It is also shown that, if appellee had obtained the nail machines, it would have sold nails to its customers in such quantities as to realize the amount of profit allowed by the jury here. In our opinion, the criterion of recovery as given by the court in the instruction quoted above was proper.

Finding no error, the judgment is affirmed, with damages.