CASE 54.—ACTION BY J. T. NELSON, &C., AGAINST THE ILLINOIS CENTRAL R. R. CO. FOR DAMAGES IN FAILING TO DELIVER PLAINTIFF A CAR-LOAD OF COTTON SEED MEAL AND HULLS, ACCORD-ING TO CONTRACT.—November 22, 1906.

## Illinois Central R. R. Co. v. Nelson, &c.

Appeal from Hardin Circuit Court.

Judgment for plaintiffs and defendant appeals.—Reversed.

1. Carriers—Bill of Lading—Receipt for Goods—Effect of Recital.—In the absence of convincing testimony establishing mistake, the recital of a bill of lading showing that the carrier received a car for shipment on a specified day must control.

2. Same—Damages for Delay in Delivery.—A carrier was not liable for special damages through a failure to deliver cotton seed meal and hulls within a reasonable time after receiving it, where it did not, at the time of such receipt, have notice of the purpose for which the shipment was intended, nor the urgent necessity of its prompt delivery.

vol. 139—29

3. Same—Effect of Notice Given After Shipment.—Notice to the agent of a carrier, at the place of delivery, after cotton seed meal and hulls had failed to arrive on time, of the use to which the consignee intended to put the shipment, was not sufficient to render the carrier liable for special damages accruing by reason of its failure to make prompt delivery thereafter.

4. Same—Measure of Damages.—As a general rule the liability of a common carrier for an unreasonable delay in transporting goods is limited to the difference between the market value of the goods when they should have been delivered and the value at the time of delivery, unless the carrier has notice at the time of receiving them of the use for which they are intended, or such use can be reasonably inferred from their character.

5. Same—Character of Goods—Inference of Necessity for Prompt Delivery.—Cotton seed meal and hulls are not of such character as to put a carrier on notice that their prompt delivery was necessary to avoid loss on cattle being fed by a shipper.

C. H. MOORMAN, J. M. DICKINSON, and TRABUE, DOOLAN & COX for appellant.

L. A. FAUREST for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In the winter of 1903 appellees were feeding a lot of cattle on their farm near East View Station, in Hardin county, and brought this action against appellant to recover damages for its failure to deliver to them in proper time at East View a carload of cotton seed meal and hulls shipped from Memphis, Tenn. The bill of lading shows that the car was received by appellant company at Memphis on November 30, 1903, and it did not arrive at East View until December 28th, when in the ordinary course of transportation it should have reached there December 4th. Appellees, in October, 1903, had shipped to them from

Memphis to East View a carload of cotton seed meal and hulls, and the delay in the arrival of this car caused them to make several inquiries of the depot agent at East View. No claim for damage is asserted because of the delay in the transportation of this car, but evidence concerning it was introduced to show that appellant had notice of the purpose for which appellees wanted this food. But it was not sufficient to charge appellant with notice that would make it liable for special damages caused by the delay in the shipment of the car on November 30th. The evidence tended to establish that when cattle have been fed, as appellees' were, for some time on cotton seed meal and hulls, they do not thrive—in fact, will lose flesh—if they are put on corn or other hard food. The cotton seed meal and hulls that appellees had were exhausted about December 1st, and from that time until December 29th they were obliged to feed their cattle on corn, fodder, and other rough feed obtainable in the country, and the damage recovered by appellees was compensation for the loss in weight of their cattle, due to the fact that they were required to feed them during the month of December on other food. It further appears that the principal market for cotton seed meal and hulls is in Memphis, Tenn., and other Southern cities, and appellees did not know where else to obtain meal after the car failed to arrive within a reasonable time. In fact, they were expecting this car every day, and probably did not make any unusual efforts to ascertain whether this feed could be purchased from feed stores in Louisville, although there is evidence that a Mr. Farmer, of Louisville, during this time had on hand a supply of it for sale.

Evidence was introduced for appellant tending to show that this car was not in its possession at Memphis at the time the bill of lading was issued, and that in fact it was not delivered to it by the connecting carrier, on whose tracks the car was loaded, until December 24th. The evidence does not clearly show where the car was on November 30th, and in the absence of convincing testimony to the contrary, sufficient to establish mistake, the statements in the bill of lading showing that appellant received this car on November 30th for shipment to appellees must control. Neither on November 30th, nor prior thereto, was appellant notified of the purpose for which this meal was wanted, or the necessity for its prompt delivery, although about the time it should have arrived at East View Station appellees notified the agent there that the car was delayed, informed him of the necessity for the feed, and the agent in response to the request of appellees, at once telegraphed the persons having charge of transportation of cars of the fact that this car had not arrived and the urgent necessity for its prompt delivery. Upon the conclusion of the evidence, appellant asked for a peremptory instruction, which was overruled; and thereupon the court instructed the jury in substance that if they believed appellant received the car on November 30th, to be carried by it to East View, and that it failed to deliver the car at the point of destination within a reasonable time after receiving same, and further believed that appellant at the time it received the car had knowledge or notice that the contents were to be carried to appellees for the purpose of feeding their cattle, and that they were dependent thereon for food, they should find for appellees the depreciation, if any, in the value

of the cattle caused directly by the unreasonable delay in the shipment; and, further, that although they might believe that appellant had no notice at the time of receiving the car of the purpose for which same was to be used, but that after the transportation thereof had been delayed it was notified of the purpose for which the feed was to be used, and that the appellees were out of feed, and thereafter appellant negligently delayed transporting the car to East View for an unreasonable time, and appellees' cattle were thereby damaged, they should find for appellees the depreciation in the value of the cattle caused directly by the failure to deliver the car within a reasonable time after receiving the notice. Other instructions were given to the effect that it was the duty of the appellees to use reasonable diligence to secure the cotton seed meal and hulls after they ascertained the delay in the arrival of this car, and that there can be no recovery for appellees if the car was not delivered to appellant until December 24th.

Appellant insists that, as it had no notice before or at the time the car was delivered to it of the purpose for which the contents were needed, it is only liable for the difference in the value of the goods at the time they should have been delivered and their value when they were delivered, and that, as there is no evidence showing any depreciation during this time, there can be no recovery. The principal questions in the case are: First, is a common carrier liable for special damages growing out of its failure to deliver goods or merchandise within a reasonable time after they have been received by it, when it did not, before or at the time of the delivery of the goods to it, have notice of the purpose for which they were needed, or the urgent necessity for their prompt

shipment? And, second, is notice to the agent of the carrier at the place of delivery, after the car .has failed to arrive on time, of the use to which the consignee intends to put the goods, sufficient to render it liable for special damages accruing thereafter, growing out the failure to promptly deliver them?

The identical questions involved in this case were before the court in Patterson v. Illinois Central Railroad Co. (decided Nov. 20, 1906), 97 S. W. 426, 123 Ky. 783. In that case the carload of cotton seed meal and hulls was delivered to the railroad company on November 1st, and did not arrive at its destination until November 24th, when it should have been received about November 4th, and on November 4th the consignee notified the company's agent at the place of destination of the purpose for which the meal was wanted. In delivering the opinion of the court, Chief Justice Hobson said: "The general rule is that, where a contract has been broken, the damages which may be recovered for the breach are such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it. It will be observed that the damages which the plaintiff sought to recover are wholly special damages growing out of the fact that he was feeding a lot of cattle on cotton seed meal and hulls, that the cattle would not eat other food without loss, and that the delay in getting the cotton seed meal entailed upon him extra labor, expense, and loss in his cattle. This special loss was due to the peculiar circumstances of the plaintiff, and the rule is that, unless such special circumstances are brought home to the other contracting party at the time the contract is made, there can be no recovery of such damages, because they

cannot reasonably be supposed to have been in contemplation of both parties at the time they made the contract. Appellant's counsel concedes the general rule to be as stated, but it is insisted that after he gave notice on November 4th of the peculiar circumstances in which he was placed, and the defendant then agreed to trace the stuff and deliver it as soon as it could, it became liable for the special damages sustained after a reasonable time for the delivery, counted from the date of that notice. But it is not averred that any new contract was made between the parties on November 4th. No new consideration is averred, and from the allegations of the petition it cannot be inferred that a new contract was made then. If one party could by a subsequent notice make the other party liable for such special damages, then the rights of the parties would not be determined by the contract between them or by their situation at that time, but by the act of one of the parties alone. The rule that the notice should be given at the time the contract is entered into rests upon the ground that the person to whom the notice is given may have an opportunity to protect himself by the contract which he makes, or by special precautions to avoid loss. A notice given afterwards by one party would afford the other party no such opportunity for self-protection. Accordingly, it is held that a notice to the carrier subsequent to the contract, and after the goods have been shipped, will not make him liable for special damages in cases of this sort."

This case is conclusive of the questions here involved, but we have examined with some care the authorities cited by appellee in support of the view that special damages in the nature of profits that might reasonably have been realized may be recover-

ed in actions for breach of contract growing out of the failure of the carrier to deliver goods or articles purchased for a specific purpose within a reasonable time, and do not find them in conflict with the opinion in the Patterson case. In Bluegrass Cordage Co. v. Luthy & Co., 98 Ky. 585, 33 S. W., 835, one of the earliest cases treating of this subject by this court, the opinion holding that such damages might be recovered was rested upon the ground that it was fairly within the contemplation of both parties that the goods were purchased with a view to a resale for profit. To the same effect is Gunther Bros. v. Taylor, 63 S. W. 439, 23 Ky. Law Rep. 536. And so, where an article is sold for a particular purpose, the purchaser may recover such special damages as may be considered within the reasonable contemplation of the parties as the natural and probable result of the breach of the contract. Wallace v. Knoxville Woolen Mills, 78 S. W. 192, 25 Ky. Law Rep. 1445; Janney Mfg. Co. v. Banta, 83 S. W. 130, 26 Ky. Law Rep. 1089; Blood v. Herring, 61 S. W. 273, 22 Ky. Law Rep. 1725; Bates v. Norton Iron Works, 113 Ky. 372, 68 S. W. 423. In Louisville & C. Packet Co. v. Bottorff, 77 S. W. 920, 25 Ky. Law Rep. 1324, the question here raised was not presented, and on the facts it is not in conflict with the views herein expressed. In Illinois Central Railroad Co. v. Mossbarger, 91 S. W. 1121, 28 Ky. Law Rep. 1217, it appears that notice was given to the railroad company before any of the food was shipped of the purpose for which it was desired.

In harmony with the doctrine announced in the cases cited, it may be said that the rule that obtains as to the measure of damages in an action by the

purchaser against the seller for damages because of delay in the shipment of goods or merchandise, when the seller had, or it is reasonable to presume that he had, notice of the purpose for which the goods were bought, and that the profit or advantage to be realized therefrom was within the contemplation of the parties at the time of the purchase, will not be applied to a common carrier in an action against it for failing to deliver goods within a reasonable time without notice of the purpose for which they are desired, and when the object of the shipper is not specially brought to the notice of the carrier, and cannot reasonably be inferred from the character of the goods, so that the special use or application for which they are intended cannot reasonably be said to have been within the contemplation of the parties when the contract of shipment was entered into. It is true that common carriers are liable in damages for the unreasonable delay in the transportation of property of all kinds—the extent of the liability being generally the difference between the market value of the goods when they should have been delivered, and their value at the time of their delivery; but when the carrier at the time the goods are received by it has notice of the use for which they are intended, or such use can be reasonably inferred from the character of the goods, and it may fairly be said that the special use to which the goods are to be put was within the contemplation of both parties at the time the contract was entered into, then special damages may be recovered. But it cannot reasonably be said that cotton seed meal and hulls are such character of goods as to put the carrier on notice that their prompt delivery was necessary to avoid loss on cattle being fed by the shipper. Newport News Co. v.

Mercer, 96 Ky. 475, 29 S. W. 301; Wells v. National
L. Ass'n., 99 Fed. 222, 39 C. C. A. 476, 53 L. R. A. 33;
Duntley v. Boston & Maine R. Co. (N. H.) 20 Atl. 327,
9 L. R. A. 449, 49 Am. St. Rep. 610; I. C. R. Co. v.
Southern Seating & Cabinet Co. (Tenn.) 58 S. W.
303, 50 L. R. A. 729, 78 Am. St. Rep. 933; B. & O.
R. Co. v. O'Donnell (Ohio) 32 N. E. 476, 21 L. R. A.
117, 34 Am. St. Rep. 579; Wood on Railway Law, p.
1607.

The judgment is reversed, with directions for a
new trial in conformity with this opinion.