CASE 63—ACTION BY THE HOPKINSVILLE CANNING COM-
    PANY AGAINST THE ILLINOIS CENTRAL R. R. CO
    AND OTHERS FOR DELAY IN SHIPMENT OF
    GOODS.—March 9, 1909.

# Ill. Cent. R. R. Co. v. Hopkinsville Can. Co.

Appeal from Christian Circuit Court.

Thos. P. Cook, Circuit Judge.

· Judgment for plaintiff, defendant appeals—Re-
versed.

1. Carriers—Carriage of Goods—Delay—Special Damages—Spe-
    cial damages such as shutting down a cannery and the
    spoiling of tomatoes by the reason of the shut down, result-
    ing from the failure of a carrier to ship a car load of cans
    in time, cannot be recovered in the absence of a showing
    that the carrier had notice of facts, which would apprise a
    person of ordinary prudence that such loss would be antici
    pated from the delay.
2. Carriers—Carriage of Goods—Special Damages—Notice—
    Notice to a carrier by the shipper that all consignments of
    cans should be rushed during the packing season is not suf-
    ficient to apprise the carrier that a consignee would be
    compelled to close down its cannery, and that its tomatoes
    would be spoiled if the shipment were delayed, so as to
    permit a recovery for such special damages from the delay.·
3. Carriers—Carriage of Goods—Connecting Carriers—Delay.—
    Where goods are routed over a particular railroad, and by
    mistake the initial carrier routes them over another which
    delays them in transit, the initial carrier is liable with the
    latter jointly for the delay.
4. Carriers—Carriage of Goods—Connecting Carriers—Delay—
    Damages.—The initial carrier in such a case is alone liable
    for expenses incurred by the consignee in removing the

goods where the expenses would not have been incurred if the goods were rightly routed.

5. Carriers—Carriage of Goods—Delay—Measure of Damages.— The measure of damages to a consignee for delay in shipping a car load of cans to be used in canning tomatoes is the difference between the market value of the cans at the time when it should have been delivered and its value at the time of delivery, and, in addition to this, the consignee may recover the amount reasonably spent after the car was delayed in telephoning and telegraphing to locate the car and secure its delivery.

6. Carriers—Carriage of Goods—Delay—Persons Entitled to Sue —Where a contract of shipment is made by a manufacturer for the buyer's benefit on filling an order, the consignee, being the real party in interest, may recover thereon for a delay in shipment.

7. Carriers—Carriage of Goods—Notice of Delivery—Where it is customary for a carrier to give notice of the arrival of a shipment of goods, it is liable for a failure to give such notice.

EDWARD P. HUMPHREY, HUMPHREY, DAVIE & HUMPHREY, HUNTER, WOOD & SON of counsel, for appellant

POINTS AND AUTHORITIES.

1. In a suit for damages growing out of delay in a shipment the owner of the goods cannot recover special damages from the carrier unless it is clearly shown that at the time the contract of shipment was made the carrier's agent to whom the shipment was delivered for transportation was notified of the purpose for which the goods were intended and the specific loss which would occur in case of delay. L. & N. vs. Mink, 31 Ky. Law Rep., 833; Marbury Lumber Co. vs. Stearns Manufacturing Co., 32 Ky. Law Rep. 739; Brand vs. Illinois Central R. R. Co., 32 Ky. Law Rep. 1335; Patterson vs. Illinois Central R. R. Co., 30 Ky. Law Rep. 78; Illinois Central R. R. Co. vs. Nelson, 30 Ky. Law Rep. 114.

2. Even though one of the parties to a contract has been negligent, the other must exercise ordinary diligence to reduce his loss to the lowest possible figure. Illinois Central R. R. Co. vs. Gheen, 112 Ky. 705; Ludlow vs. Steffen, 19 Ky. Law Rep. 1671; Am. & Eng. Ency. of Law (2nd Edition), Vol. 8, page 605.

3. The measure of damages ordinarily applied in cases of delay to shipments in transit, is the difference between the value of the shipment at the place of delivery at the time it should

have reached there in due course of transportation, and the time it did arrive. Albrecht vs. L. & N. R. R., 10 Ky. Law Rep. 449; N. N. & M. V. vs. Reed, 10 Ky. Law Rep. 1020.

4. Any connecting carrier receiving a shipment for transportation over its line undertakes to carry same with reasonable dispatch, and is liable to the owner of the goods for failure so to do. Illinois Central R. R. Co. vs. Curry, 32 Ky. Law Rep. 514.

HANBERRY and FOWLER for appellee.

## AUTHORITIES.

A departure from the route fixed in the contract of shipment will render the carrier responsible for all losses, even those arising from the acts of God. Sec. 6597 Vol. 5 Thompson's Negligence.

Where a carrier diverts the shipment from the routing fixed by the contract it continued liable as though the goods remained in its possession to destination. C., N. O. & I. P. Ry. Co. vs. Pendleton & Hudson, 96 S. W. 434.

By diverting the shipment from the route agreed on, carrier cannot avail itself of any stipulation in its contract limiting its liability, and becomes an insurer for the delivery of the goods. C. N. O. & I. P. Ry. Co. vs. Pendleton & Hudson, 96 S. W. 434; S. W. Ry. Co. vs. L. T. Lumber Co., 109 S. W. 1143

Where the contract provides for notice, or where it is the custom to give such notice, it is the duty of the carrier to give the consignee notice of the arrival of goods at its station. Briant vs. L. & N. R. R. Co., 9 Ky. Law Rep. 47.

Where a connecting carrier receives live stock or freight from the initial carrier, or an immediate carrier, without limiting its liability, it must be assumed to have accepted the shipment under the terms of the original contract. L. & N. R. R. Co. vs. Carrico, 95 Ky. 489; P. C. C. & St. L. Ry. Co. vs. Viers, 113 Ky. 526, 68 S. W. 469; Chicago & C. I. R. R. Co. vs. Chestnut Bros., 89 S. W. 298.

Each connecting carrier to the point of destination will be considered as having appointed the initial carrier its agent for the purpose of entering into the contract, and will be liable on the contract made with the initial carrier the same as if made directly with it. I. C. R. R. Co. vs. Curry, 106 S. W. 294.

It is the settled law in this State that where freight is shipped from a point in this State to any point within or without the State, the contract of shipment made with the initial carrier is binding upon all connecting carriers whether intermediate or remote who receive said freight. I. C. R. R. Co. vs. Curry, 106 S.

W. 294.

Where an article is sold for a particular purpose, the purchaser may recover such special damages as may be considered within reasonable contemplation of the parties as the natural and probable result of the breach of contract. Wallace v. Knoxville Woolen Mills, 78 S. W. 192; Janney Mfg. Co. v. Banta, 83 S. W. 130.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

The Hopkinsville Canning Company in the year 1905 made a contract with a number of farmers in the neighborhood to take their tomatoes, and also made a contract with the American Can Company to ship them cans from Indianapolis to pack the tomatoes. On August 22d the canning company telegraphed to the American Can Company to ship them a car load of cans so as to arrive there on the 25th; that they were out of cans. The American Can Company put the cans on a car and delivered them to the Trunk Line at Indianapolis on the night of August the 28th. The Trunk Line delivered them to the Big Four Railroad Company on the morning of August 29th. The Big Four took them to Louisville, arriving there at 6:15 a. m., August 30th, and delivered them to the Illinois Central Railroad Company. According to the routing which had been given when the freight was started, these cans should have been delivered to the Louisville & Nashville Railroad Company at Louisville, but by a mistake of the yardman they were delivered to the Illinois Central. Both the Illinois Central and the Louisville & Nashville had lines to Hopkinsville, but the Louisville & Nashville had put in a spur track to the factory of the canning company, and the Illinois Central had no connection with it; its station being a mile away. The

Illinois Central took the car load of cans to Hopkinsville. According to its proof, the cans arrived there September 1st. Next day was Sunday, and the next day was Labor Day. According to its proof, it gave notice of the arrival of the car on Tuesday, September 4th. According to the proof of the canning company, no notice was given of its arrival until the 6th or 7th. The canning company at first refused to receive the cans as the car was a mile from its factory; but on the following Saturday it did agree to take the cans out of the car and commenced hauling them over. When the car did not arrive by August 31st, the canning company began looking around for other cans, and finally secured a car load of cans from Bowling Green, Ky., which arrived on September 5th. It brought this suit against the Big Four Railroad Company and Illinois Central Company to recover damages on account of the delay in the shipment of the car load of cans, alleging that it had been forced to shut down its factory for want of cans for five days by reason of the delay in the shipment of these cans which should have reached them by August 31st; that during this time $500 worth of tomatoes which it had bought spoiled; that its necessary expenses while its factory was standing idle were $500; that it spent $150 for the car load of cans at Bowling Green above its contract price with the American Car Company; that it had spent $50 in telegraphing and telephoning and $75 more in hauling the car load of cans from the Illinois Central station over to its factory. The Illinois Central filed answer denying the allegations of the petition; on a hearing of the case there was a judgment in favor of the

plaintiff against both companies for $1,250, and they appeal.

In Patterson v. I. C. R. R. Co., 123 Ky. 783, 97 S. W. 426, the court said: "The general rule is that, where a contract has been broken, the damages which may be recovered for the breach are such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it. It will be observed that the damages which the plaintiff sought to recover are wholly special damages growing out of the fact that he was feeding a lot of cattle on cotton seed meal and hulls, that the cattle would not eat other feed without loss, and that the delay in getting the cotton seed meal entailed upon him extra labor, expense, and loss in his cattle. This special loss was due to the peculiar circumstances of the plaintiff and the rule is that, unless such special circumstances are brought home to the other contracting party at the time the contract is made there can be no recovery of such damages, because they cannot reasonably be supposed to have been in contemplation of both parties at the time they made the contract." In the subsequent case of I. C. R. R. Co. v. Nelson, 97 S. W. 757, 30 Ky. Law Rep. 114, after referring to the Patterson Case and a number of other cases, the court said: "In harmony with the doctrine announced in the case cited, it may be said that the rule that obtains as to the measure of damages in an action by the purchaser against the seller for damages because of delay in the shipment of goods or merchandise when the seller had, or it is reasonable to presume that he had, notice of the purpose for which goods were bought, and that the profit or advantage to be realized

therefrom was within the contemplation of the parties
at the time of the purchase, will not be applied to a
common carrier. in an action against it for failing to
deliver goods within a reasonable time without notice
of the purpose for which they are desired, and when
the object of the shipper is not specially brought to
the notice of the carrier, and cannot reasonably be
inferred from the character of the goods, so that the
special use or application for which they are intended
cannot reasonably be said to have been within the con-
templation of the parties when the contract of ship-
ment was entered into. It is true that common car-
riers are liable in damages for the unreasonable delay
in the transportation of property of all kinds, the ex-
tent of the liability being generally the difference
between the market value of the goods when they
should have been delivered and their value at the
time of their delivery; but, when the carrier at the
time the goods are received by it has notice of·the use
for which they are intended, or such use can be reason-
ably inferred from the character of the goods, and it
may be fairly said that the special use to which the
goods are to be put was within the contemplation of
both parties at the time the contract was entered into,
then special damages may be recovered, but it cannot
reasonably be said that the cotton seed meal and hulls
are such character of goods as to put the carrier on
notice that their prompt delivery was necessary to
avoid loss on cattle being fed by the shipper." After-
ward in Louisiville & N. R. Co. v. Mink, 103 S. W. 294,
31 Ky. Law Rep. 833, the court said: "We deduce
from the reasoning in the authorities, and as the sim-
ple right of the matter, that the notice that should be
given, or be in the minds of both parties, when the·

contract of shipment is made, should be of such special matters as naturally and reasonably apprise the party to be charged of the probable special consequences of its breach, and should be given to the carrier (if a natural person), or to that agent who entered into the particular contract, or under whose authority it was made.''

Under the principles laid down in these opinions, there can be no recovery here of the special damages sustained by the canning company by reason of the tomatoes spoiling or the factory being suspended for want of cans, unless notice was given the carrier at the time the shipment was made of facts sufficient to apprise a person of ordinary prudence that such losses were to be anticipated from the delay of the cans on the journey. To show such notice to the carrier, the plaintiff took the testimony of H. C. Branham and H. C. Hendrickson, two agents of the American Can Company at Indianapolis who made the shipment. They stated in effect that they had given the railroad companies notice to rush all shipments during the packing season from the fact that all shipments must be treated as perishable goods, because perishable goods were at the other end of the line waiting for them. All shippers of goods wish their customers supplied as quickly as possible. A notice to rush all shipments is not a notice that special damages may be anticipated from the delay in a particular shipment. We have read carefully the testimony of these witnesses, and the above is in substance all that they say. There is not enough in their testimony to warrant a recovery of special damages against the railroad companies. The fact that the car was shipped in the packing season was not notice to the railroad

companies that the cans were needed immediately to prevent a factory from standing idle or tomatoes from spoiling. The shipment was made to the order of the American Can Company, and for what purpose the American Can Company was shipping its own cans to its own order at Hopkinsville the shipment apprised nobody. To say that all cars must be rushed through in the packing season, and that the railroad company must anticipate during the packing season such damages as are here sued for, would be to presume that the business of packing is run without ordinary provision for such delays as may be often anticipated in the shipment of freight by railroads. It is true that notice was given to the carriers after the car did not arrive in time, but this notice added nothing to the liability of the railroad companies. Patterson v. I. C. R. R. Co., 123 Ky. 783, 97 S. W. 426; I. C. R. R. Co. v. Nelson, 97 S. W. 757, 30 Ky. Law Rep. 114. When the goods were ordered, they were routed on the Louisville & Nashville Railroad. The Big Four by mistake sent them over the Illinois Central Railroad. For this deviation of the goods the Big Four is responsible for the delay occurring on the Illinois Central jointly with that company. In 6 Cyc. 383, the rule is thus stated: "If the carrier in transporting the goods unnecessarily deviates from the usual and ordinary route contemplated in the undertaking, he will be liable for any loss occurring during any such deviation, although such loss is within the recognized exception to the carrier's liability. Indeed, it is said that in departing from the established route the carrier is guilty of misfeasance, and is liable for the value of the goods on the theory of conversion." See, also, to same effect Commonwealth, etc. v. Pendleton (Ky.)

96 S. W. 434. The Big Four brought the goods to
Louisville within a reasonable time. There was no un-
reasonably delay between Indianapolis and Louisville.
The proof before us does not show as definitely as it
might why the car was delayed between Louisville and
Hopkinsville, or how much it was delayed. The records
are produced showing just when the car reached Louis-
ville, and when it was turned over to the Illinois Cen-
tral Railroad, but the records are not produced show-
ing at what time the car reached Hopkinsville or when
it left the other two points at which the trains were
broken up. If the car had been shipped as it was
routed, the expenses which the canning company incur-
red in unloading the car could have been avoided. For
these damages the Illinois Central is not responsible,
and the Big Four is alone responsible for this. They
are both responsible for the damages growing out of
the car being unreasonably delayed between Louisville
and Hopkinsville. The measure of such damages is
the difference between the market value of the freight
at the time when it should have been delivered and its
value at the time of delivery; and, in addition to this,
the plaintiff may recover the amount it reasonably
spent after the car was unreasonably delayed in tele-
phoning and telegraphing to locate the car and secure
its delivery. The contract of shipment was made by
the American Can Company for the benefit of the
plaintiff, and it may recover thereon, as it is the real
party in interest. It was incumbent on the carrier to
give notice of the arrival of the goods as it was cus-
tomary to give such notice.

We have considered the deposition of Hendrickson
as though the omitted answer was as shown in the

affidavits; for this answer, when read with the whole deposition, does not affect its meaning.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.