## Smith & Nixon Company v. Curry.

(Decided May 3, 1912.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Contracts—Action to Enforce Mortgage Lien on Piano—Counterclaim—Practice.—In an action in the Jefferson Circuit Court by appellant to enforce a mortgage lien for damages on a piano, to which appellee filed a counterclaim and sought the cancellation of certain notes, the action was filed in equity, but was transferred to the common law docket for trial upon the common law issues. A jury trial was had, resulting in a verdict on the counterclaim, and upon the return of the case to the chancery court judgment was entered accordingly. Appellant complains of the general order of transfer and contends that only certain specific questions of fact should have been certified and that the verdict should have been in the nature of answers to these questions. Held, That the procedure in the common pleas court was proper, and the submission of the issues by instructions for a general verdict instead of asking for specific answers at the hands of the jury to certain specific questions of fact was proper.

2. Instructions—Loss of Profits.—Before appellee could lay any claim for loss of profits in the way of earnings she would have received in teaching her pupils had appellant not removed the piano, she must affirmatively show that she made an effort, and was unable to obtain a piano elsewhere with which to carry on her business. The fact that she was unable to teach any given pupil for a time does not mean that she should be paid for the loss of that pupil.

HARDIN H. HERR and PERCY N. BOOTH for appellant.

BENNETT H. YOUNG and HENRY G. BEDDINGER for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

On March 21, 1907, the appellant company entered into the following contract with the appellee:

"Louisville, Ky., March 21, 1907.
"This is to certify that Steinway Piano No. 123259 is perfect in every respect and should it not be thoroughly satisfactory in every respect we will exchange it free of charge for any other Style I Steinway. We furthermore agree to let Mrs. Curry have a Style A Baby Grand mahogany any time within eighteen months from this date at a difference of one hundred ninety-one ($191) dollars. We also agree to loan Mrs.

Curry a Kurtzman one year free of charge. We will also keep the piano in tune one year free of charge. Total price of Style I, $600.

"SMITH & NIXON CO.,<br>"By EVAN HAMMON,<br>"Manager.

"Witness: CHAS. VAUPEL."

The Steinway piano first named was delivered to her at the time. She made a payment in cash and executed to the Smith & Nixon Company sixteen notes for $20 each, payable from month to month, and one note for $250. She paid eight of the $20 notes, which, together with the cash payment made by her, amounted to $190. On November 25, 1908, the appellant company filed its petition in equity, seeking to recover judgment for the eight unpaid $20 notes and the $250 note, a total of $410; and to subject to the payment of its debt the piano named, which appellee had mortgaged to the appellant to secure the purchase price. The appellee filed answer and counterclaim. She set up the above named contract, which had not been filed by the plaintiff. She set up that within the eighteen months named in the contract she had declared her purpose to exercise her option to exchange the Steinway piano for the Steinway Grand Piano named in the contract, by paying the $191 difference; that at the instance and request of the appellant she had gone to New York to select the Grand piano, and had done so; that when the Grand piano reached Louisville the appellant company refused to give it to her, though she had offered to pay the $191 difference; that at the time of her election to take the Grand piano the Smith & Nixon Company took from her rooms the Steinway, which it had originally furnished her; that they failed to furnish her the Kurtzman piano, which she could use in her avocation of teaching music; that she did not have any piano, therefore, wherewith to teach; and that she had been damaged $500, losses resulting from her failure to have a piano wherewith to instruct her pupils in music. She prayed judgment for the recovery of the $190 paid, and for $500 in damages. She set up certain other small items for which she sought recovery, but they were eliminated upon the jury trial hereinafter named and need no consideration. Issue was joined, whereupon, upon Mrs. Curry's motion, the case was transferred from the Chancery docket to

the Common Law docket for trial upon the common law issues. · Under the practice prevailing in the sundry branches of the Jefferson Circuit Court the case was sent to the Third Division of the Common Pleas branch for jury trial. A jury trial was there had, which resulted in a verdict in Mrs. Curry's favor for $350. Upon the return of the case to the Chancery Court judgment was entered accordingly, the plaintiff's petition was dismissed and the notes were declared void and cancelled. From that judgment this appeal is prosecuted.

The case was tried in the Common Pleas Branch in the same manner as any other common law action. The order of transfer was a general order of transfer for trial of the common law issues. The instructions submitting the case to the jury in the Common Pleas Court were given as if the action were a common law action originally instituted there for damages by Mrs. Curry, as plaintiff, against the Smith & Nixon Company, as defendant. Of this the appellant complains. Its position is that instead of the general order of transfer, the Chancery Branch should have certified to the Common Pleas Branch certain specific questions of fact raised by the pleadings, and that the verdict of the jury should have been in nature answers to these specific questions, instead of the general form in which it was rendered. Our Code of Practice, section 10, provides that "the defendant, by motion made when he answers, may have an equitable action transferred to the ordinary docket * * * if the answer present a defense of which he is entitled to a jury trial;" and section 12 provides that "in an equitable action, properly commenced as such, either party may, by motion, have the case transferred to the ordinary docket for the trial of an issue concerning which he is entitled to a jury trial." These sections apply as much to a common law issue presented in a counterclaim as to such an issue presented by a petition. There are two distinct classes of equitable cases in which jury trials may be awarded; first, those in which, in a matter of pure equitable cognizance, the chancellor himself desires, or a party litigant desires, the chancellor to have the benefit of a jury trial of certain facts at issue pertinent or ancillary to the determination of the equities of the case; and second, those actions in which the issue is distinctly a legal issue, which, in itself, determines the case. In this second

class of cases the verdict of the jury is more than directory to the chancellor. It is conclusive between the parties, unless the court, upon a motion for a new trial, should be satisfied that it was against the weight of the evidence or that some error had been committed, as in any ordinary action properly commenced as such. It is impossible by any general statement to fix a rule sufficiently definite as to determine any particular class or classes of cases in which the jury verdict should merely be directory or advisory to the court, upon the one hand, and in which, upon the other, it would be conclusive. This distinction is drawn in the case of Hill v. Phillips' Admr., 87 Ky., 169, where it is said:

"In a case of purely equitable cognizance, the chancellor has the discretionary power to direct an issue of fact to be tried by a jury; and their verdict is, generally speaking, treated by the chancellor as conclusive between the parties; but it is not necessarily conclusive, for the reason that the chancellor simply seeks the advice of the jury to aid him in coming to a correct conclusion on a mooted question of fact. But this principle does not apply where there is a distinct legal issue made in an equitable action; for the reason that the twelfth section of the Code gives either party the right to have such issue tried by a jury, and their verdict, as in ordinary jury trials, is conclusive between the parties, unless the court, upon a motion for a new trial, is satisfied that it is palpably against the weight of evidence."

The same doctrine is announced in the case of Moraweck, et al. v. Martineck's Guardian, et al., 128 Ky., 155. In the case at bar the action was brought upon the equity docket only because of the single circumstance that the notes set up in the plaintiff's petition were secured by mortgage, a foreclosure of which was sought. Without it, of course, the action upon the notes was at common law. The defendant's denial of liability and her counterclaim for damages were as well at common law. The equitable right to a foreclosure was but an incident of the litigation. It is difficult to conceive of a case which falls so clearly within the second class of cases named above. The right to the foreclosure depended entirely upon a prior ascertainment of whether there was any debt in existence, secured by the mortgage. It was clearly a case in which the ascertainment by the jury was conclusive as between the parties in the same way and to the same extent that any other jury

verdict is conclusive as between the parties. It follows as a matter of course that the procedure in the Common Pleas Court was the proper procedure, and that the submission of the issues by instructions for a general verdict, instead of by asking at the hands of the jury specific answers to certain specific questions of fact, was proper. The case of Bannon v. Patrick Bannon Sewer Pipe Co., 136 Ky., 136, is not in conflict with this view. That case was of general equity cognizance upon which the issues of fact were for the guidance of the chancellor, and the case falls within the first of the classes above enumerated.

It is argued that the verdict of the jury is so uncertain as to vitiate it, because, as is claimed, a general instruction was submitted rather than instructions dealing with separate items incident to the different pianos, and that the jury's verdict in response to the general instruction does not serve to enlighten upon which feature of the counterclaim the verdict was returned. The item of $190 paid on the Steinway piano was separately submitted with an instruction to find this sum for Mrs. Curry in case the jury should find for her at all. This was right, for the identical piano upon which $190 had been paid had been taken by the Smith & Nixon Company back from Mrs. Curry; and it had her $190 as well. The company could not keep both the money and the piano. The question of damages was segregated in the instruction—not damages because of the failure to furnish the Kurtzman or the Grand Steinway, but the damages which Mrs. Curry had suffered because she had no piano on which to teach. The verdict was not uncertain. It embraced the peremptory sum of $190 paid on the piano, and $160 of damages. Its intent is perfectly clear.

It is next urged that the profit which Mrs. Curry might have earned from teaching had she had the piano is not the proper measure of damage, and that the court erred in so fixing it. The evidence is clear that Mrs. Curry wanted the piano to use in her avocation of music teacher, and that the appellant knew it at the time.

This doctrine allowing the recovery of profits has been recognized in Kentucky in the case of Bluegrass Cordage Co. v. Luthy & Co., 98 Ky., 583; Bates v. Norton Iron Works, 113 Ky., 372; Fairbanks, Morse & Co. v. Hooper, 147 Ky., 154; and in many other cases. It is the proper rule in this case upon one condition and one

alone. That condition was not made apparent in the trial in the lower court and the giving, therefore, of this instruction allowing profits was error. That condition is, that before Mrs. Curry could lay any claim for her loss of profits she must affirmatively have shown that she made efforts to, and was unable to, obtain a piano elsewhere with which to carry on her business. In other words, the correct measure of her damage, in the absence of any further showing than that she did not receive the Kurtzman piano wherewith to teach, would be the reasonable value of its use for the time that she was deprived of such use not exceeding one year; but if she further showed that she made effort to, and was unable to, obtain a piano elsewhere, then she might recover for her reasonable profits. And the measure of her damage, if any, for her failure to receive the Grand Steinway was the difference, if any, between the contract price and market price, if any, at the time and place where it was to be delivered. These facts are all for determination by the jury, under proper instructions. The principle declared is set forth in the case of Bluegrass Cordage Co. v. Luthy & Co., supra.

The last foregoing discussion upholds also appellant's claim that the Common Pleas Court erred in its failure to instruct the jury that there could be no recovery for anticipated profits unless Mrs. Curry had made proper efforts to minimize her damage by obtaining a piano elsewhere.

As the case needs to be tried again it is proper to remark that instruction No. 5 was misleading in allowing the jury to fix a compensation "for any loss of pupils." What Mrs. Curry lost, if anything, was the profits or earnings which she would have made out of her occupation of teaching music. The fact that she was unable to teach any given pupil for a time does not mean that she should be paid for the loss of that pupil.

It is also complained that the trial court erred in adjudging the notes concelled. That part of the judgment was surplusage. The jury, in finding that the appellant was entitled to no recovery, held that the notes were not good. The effect was the same whether the trial court did or did not declare them void.

For the reasons given the judgment is reversed for a new trial not inconsistent herewith.