## FRANKLIN MANUFACTURING COMPANY v.
## UNION PACIFIC RAILROAD COMPANY.

248 N. W. 2d 324.

December 17, 1976—No. 45974.

*Sanborn & Grayson* and *Timothy W. Jorissen,* for appellant.
*Kempf & Miller* and *Thomas A. Miller,* for respondent.

Considered and decided by the court without oral argument.

PER CURIAM.

This is an appeal from a judgment of the Hennepin County District Court granting summary judgment in favor of plaintiff, Franklin Manufacturing Company, in the amount of $1,095 as damages arising out of a breach of contract by defendant, Union Pacific Railroad Company. We reverse and remand for further proceedings.

The matter was presented to the trial court upon a stipulation of facts. Plaintiff, a Minnesota corporation, placed an order with Owens-Corning Fiberglass Corporation in Kansas City, Kansas, for insulation materials to be used in plaintiff's manufacturing business. As is customary in the trade, shipping specifications and arrangements were made between plaintiff and Owens-Corning with plaintiff prepaying freight charges to the latter.

On May 7, 1970, defendant, Union Pacific Railroad Company,

a corporation not registered to do business within this state,[1] was engaged by Owens-Corning to transport the goods to plaintiff. The goods were delivered to defendant's Erie Car No. 87321 on that date. Although the shipment was to be directly routed to its destination, admitted misrouting occurred, and on May 21, 1970, 14 days after delivery to defendant, the shipment was still in defendant's possession. At that time the plaintiff had the freight transferred from the defendant's railroad to a truck transportation company for delivery in Minnesota. The sole contact between plaintiff and defendant prior to the commencement of this action was an inquiry by plaintiff as to the location of the goods after delivery had been delayed for that period of time.

Plaintiff claimed damages in the amount of $1,095, the cost of the alternate transportation of the materials to Minnesota. The court considered evidence that on June 22, 1970, the prepaid freight charges were refunded by defendant to Owens-Corning in the amount of $209.60. In addition, the parties stipulated that the average shipping time of like orders in the past was 7 days and that plaintiff did not notify defendant prior to shipment that any delay would result in damage or loss to plaintiff. Plaintiff's examination of the goods upon ultimate receipt indicated that they were in serviceable condition without damage.

In awarding summary judgment in favor of plaintiff, the court concluded:

"The Court has awarded plaintiff damages in this matter. Although they may be special damages, the Court is of the opinion that even though the parties to this lawsuit did not deal directly it can be inferred from the very nature of the contract relationship that there was an intent on the part of all the parties that delivery actually be made. The parties have stipulated that in the past shipments of similar materials have taken an average

---

[1] Jurisdiction over defendant was established by Franklin Mfg. Co. v. Union Pacific R. Co. 297 Minn. 181, 210 N. W. 2d 227 (1973).

of seven days to complete delivery from Kansas City to St. Cloud, Minnesota. The stipulation entered into by the parties also evidences defendant's breach of contract in failing to transport plaintiff's property with reasonable dispatch. In fact, this breach is admitted to in defendant's brief (page 7).

"The Court notes that the claim is not for lost profits but merely the amount spent by plaintiff to remedy defendant's breach and carry out the objective of the contract."

It is well established that when an unreasonable and unnecessary delay in the transportation of goods has occurred, the carrier is liable for those damages which may be reasonably supposed to have been contemplated by the parties as a probable result of the breach. See, 13 Am. Jur. 2d, Carriers, § 377; and Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854). In other words, the damages must either have been within the contemplation of the carrier at the time it entered into the contract or be so likely to result from the breach that they can reasonably be said to have been foreseen. As stated in 5B Dunnell, Dig. (3 ed.) § 2560:

"* * * When the damages are assessed as those which it is reasonable to suppose that the parties had in mind, what is really meant is that the law, aiming at compensation, * * * considers it fair to hold a defendant for damages which as a reasonable man he *ought to have foreseen as likely to follow from a breach*. What he in fact foresaw or contemplated is immaterial. [Citing several Minnesota cases.]" (Emphasis supplied.)

Thus, the dispositive issue in the instant case is simply whether at the time of entering the contract defendant-carrier could have reasonably foreseen as likely that plaintiff-purchaser would procure substitute transportation if there was a delay in the delivery of the goods.

Whether plaintiff's action in causing the goods to be shipped to it by means of substitute transportation was reasonably foreseeable as a probable consequence of defendant's breach is a

*question of fact* which depends upon the nature of the contract, the circumstances surrounding its execution, and the circumstances surrounding the cause and extent of the delay itself. While it appears from the stipulated facts that there was no reason for defendant to believe that there was special need for prompt delivery of plaintiff's goods, it is not clear what the length of the delay would have been before the goods were delivered to the plaintiff by defendant. The length of delay is a critical consideration in assessing the foreseeability of plaintiff's action in securing other transportation. If the delay in delivery was only going to be minimal, it would not be reasonably foreseeable by the defendant that plaintiff would procure substitute transportation. On the other hand, if the delay was going to be substantial, it could well be reasonably foreseeable by defendant that plaintiff would feel compelled to procure substitute transportation of its goods. Therefore, we have concluded that the matter should be remanded to the trial court to determine the anticipated length of the delay and whether plaintiff's action in procuring substitute transportation was reasonably foreseeable by defendant in light of the anticipated length of the delay.

Reversed and remanded for further proceedings.

PETERSON, JUSTICE (dissenting).

The majority opinion, in my view, fails to focus upon the nature of the damages sustained by the plaintiff, for decision in this case must turn upon whether the damages sustained are general or special in character.

General damages, according to the principles established in Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854), and adopted in this state, Liljengren Furniture & Lbr. Co. v. Mead, 42 Minn. 420, 44 N. W. 306 (1890), are those which are reasonably foreseeable as a result of the breach of contract. They are deemed to have been within the contemplation of the parties at the time the contract was formed, irrespective of whether or not they were actually within the contemplation of the parties. See,

also, 22 Am. Jur. 2d, Damages, § 57; 5B Dunnell, Dig. (3 ed.) § 2559, and cases cited.

Special damages, in contrast, are those which the law will not charge a defendant with having foreseen and which, accordingly, are recoverable only if the defendant was advised of special circumstances which put him on notice that such damages would result in the event of breach. Liljengren Furniture & Lbr. Co. v. Mead, *supra*; Scheppel v. Arkansas-Best Freight System, Inc. 117 Ill. App. 2d 60, 254 N. E. 2d 280 (1969); Alton R. Co. v. Oklahoma Furniture Mfg. Co. 190 Okla. 216, 122 P. 2d 152 (1942); Conditioned Air Corp. v. Rock Island Motor Transit Co. 253 Iowa 961, 114 N. W. 2d 304 (1962).

The damages which plaintiff seeks to recover from defendant-carrier are special damages. The complaint expressly demanded the cost of alternative truck transportation of the materials as "special damages resulting from the excessive delay in delivery."[1] Plaintiff's own characterization of the damages is consistent with the allegation in its complaint that to have waited for defendant to deliver the misrouted goods would have forced plaintiff to close down its plant for lack of these goods. Similar claims for the cost of maintaining an idle factory, wages paid to idle employees, loss of use of goods, or lost profits as the result of delay in transportation of goods, have consistently been held to be claims for special damages. See, e. g., Alton R. Co. v. Oklahoma Furniture Mfg. Co. *supra*; Illinois Cent. R. Co. v. Hopkinsville Canning Co. 132 Ky. 578, 116 S. W. 758 (1909). See, generally, Annotation, 166 A. L. R. 1034, 1056; 13 Am. Jur. 2d, Carriers, §§ 377 to 379. The gravamen of these cases is that a carrier will not be held to have foreseen that failure to promptly deliver goods to be used in manufacturing would result in a plant shutdown.

---

[1] Defendant's breach was one of delay rather than a refusal to perform. It is not claimed that defendant was unable or unwilling to complete performance. Plaintiff's unilateral undertaking to use substitute transportation prevented defendant from completion of the contract.

It is clear from the stipulation of the parties that plaintiff gave defendant no notice that the delay in delivery of its goods would result in such damages. If lost profits are not recoverable in such a case, it follows that plaintiff may not recover costs incurred to avoid lost profits. The failure of plaintiff to notify defendant that prompt delivery was dictated by special circumstances should relieve defendant of liability for these special damages. I accordingly dissent and would reverse, ordering summary judgment for defendant.

OTIS, JUSTICE (dissenting).

I join the dissent of Mr. Justice Peterson.

ROGOSHESKE, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Peterson.