Tom S. ANDERSON, Respondent,

v.

MEDTRONIC, INC., Appellant.

No. C5–84–1119.

Court of Appeals of Minnesota.

April 9, 1985.

Review Granted June 24, 1985.

Terence M. Fruth, Minneapolis, for appellant.

Michael T. Nilan, Minneapolis, for respondent.

Heard, considered, and decided by HUSPENI, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

Medtronic appeals from a judgment entered against it for non-payment of incentive pay to its former employee, Tom Anderson. Medtronic contends that the court erred by (1) submitting to the jury a question on bad faith which was not relevant to any issue in the litigation, (2) directing a verdict on the issue of whether Anderson completed his employment contract, (3) denying its request for a jury instruction relating to misrepresentation by omission, (4) excluding relevant evidence, and (5)

awarding attorney's fees. The court awarded Anderson $10,891 for unpaid wages, $2,618 as a penalty under Minn. Stat. § 181.13 (1982), and $16,859 in attorney's fees under Minn.Stat. § 181.14. We reverse and remand for a new trial.

## FACTS

Anderson was employed by Medtronic in 1970. He rose through the ranks of management and by 1977 he was invited to join Medtronic's exclusive Management Incentive Plan. The purpose of this plan was to provide incentives for extraordinary performance and to help Medtronic retain its high quality, high level executives. Under the plan, Anderson was given the opportunity to increase total compensation by up to 24% over his regular salary for fiscal 1979. This dispute involves Anderson's second year of participation in the plan—May 1, 1978 to April 30, 1979.

By early 1979, Anderson determined that his fortunes and future at Medtronic were stalling out. Evidence was conflicting as to the availability of opportunities within the company. Medtronic claims that Anderson was offered superior posts. Anderson countered that any offers were pointedly unattractive.

In January 1979, a professional personnel recruiter, Mary Bowman, contacted Anderson to set up interviews with Thierry Hermann. Hermann was an executive of a French-owned medical company, ELA Medical, which manufactures cardiac pacemakers in competition with Medtronic. Negotiations took place over the course of a few months, during which time Anderson met Hermann in Minneapolis and then in France. He encouraged ELA to locate in Minneapolis.

While on business for Medtronic in Miami in March 1979, Anderson met with Hermann to pin down an agreement. By early April, an agreement in principle apparently had been reached. A three-year employment contract was signed in June 1979, at which time Anderson began work for ELA Medical.

Medtronic stresses the fact that ELA was in competition with its pacemaker division. Anderson counters that more than two years had lapsed since he had left that division.

At the end of March 1979, Anderson told his immediate supervisor, George Heenan, that he was considering outside employment. On April 2, Anderson sat down with Heenan and Linda Medin, a personnel department representative, to negotiate a termination package. Part of the package was that Anderson would be kept "on the payroll" until the end of the fiscal year for benefits, including eligibility under the plan. The three agreed, among other things, that Anderson would leave Medtronic as of May 1, 1979, and that he would be entitled to all of his management incentive benefits. The following week Anderson met with Hermann to finalize their negotiations.

After meeting with Hermann, Anderson went to Medtronic's legal department to advise them that he was negotiating with a competitor. They sent him to Medtronic vice president Bert Amdahl. On April 13, Amdahl directed Anderson to leave the premises because of potential conflicts of interest. Amdahl did not fire Anderson. Anderson never returned to work, but remained in contact with Medtronic through the rest of April.

A memo dated May 1 was sent to Anderson reflecting his April 2 discussions with Medin and Heenan. It stated that he would be entitled to his incentive pay. The memo had been screened by Medtronic's legal staff who inserted the sentence, "The above terms assume that you will not take a position that would be in violation of your employment agreement." In fact, Anderson's employment agreement contained a clause that stated:

> During my employment, I will not plan, organize or engage in any business competitive with any product or service marketed or planned for marketing by the Company or conspire with others to do so.

Early in June 1979, Anderson began work for ELA. Thereafter, Medtronic refused to honor the termination agreement and did not send Anderson his incentive plan money. At trial, the court ruled as a matter of law that Anderson had completed his employment contract. The jury determined that Medtronic withheld his incentive pay in bad faith. As a result, the court awarded damages, including attorney's fees.

## ISSUES

1. Did the court err by instructing and submitting to the jury an issue regarding Medtronic's bad faith?

2. Did the court err by awarding attorney's fees under Minn.Stat. § 181.14?

## ANALYSIS

1. Medtronic contends that the court erred by submitting the following question to the jury: "Did Medtronic act in bad faith by not paying Tom Anderson his Incentive Plan claim?" This question was given in conjunction with an instruction on bad faith:

> Tom Anderson asserts that Medtronic acted in bad faith in not paying Tom Anderson's Incentive Pay Plan claim * *.
>
> 'Bad faith' means a refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties, but rather by some ulterior motive.

Anderson's primary cause of action is a contract action for nonpayment of his incentive pay. Under the facts here, this may be construed alternatively as a statutory action under Chapter 181. Under either interpretation, bad faith is not an element of Anderson's claim.

Anderson's pleadings sought punitive damages. Generally, bad faith is relevant to this issue. But punitive damages may not be recovered in a contract action unless there is evidence of an independent tort. *Barr/Nelson, Inc. v. Tonto's, Inc.*, 336 N.W.2d 46 (Minn.1983). No

independent tort was pled in this case. Therefore, bad faith was not relevant to Anderson's contract claim.

■ The court awarded Anderson $2,618 as a penalty under Minn.Stat. § 181.13 (1982). This section is not triggered by bad faith, only by the employer's failure to promptly pay wages due. No other section in Chapter 181 includes bad faith as an element. Therefore bad faith was not relevant to Anderson's statutory claim.

■ Anderson also requested an award of attorney's fees. The court may make such an award when it finds that the opposing party or counsel acted in bad faith in the conduct of the litigation. Minn.Stat. § 549.21 (1982). But such an award does not justify the court submitting the issue of bad faith to the jury. The court, not the jury, is the arbiter under section 549.21.

■ We are left to conclude that the court had no legitimate reason for submitting the bad faith issue to the jury. Moreover, we are convinced that the question concerning bad faith and the correlative instruction prejudiced Medtronic by focusing the jury's attention on an irrelevant and perhaps highly charged emotional issue. Its effect is an improper impression on the jury. The jury, in a sense, was allowed to decide only if Medtronic committed active fraud and if Medtronic acted in bad faith. A new trial is required.

By remanding for new trial on the erroneous jury instruction, it would be inappropriate and also misleading for us to rule on whether the court erred by directing a verdict, on whether an improper instruction was submitted to the jury on misrepresentation, and on whether certain evidence was admissible. These issues are primarily evidentiary in nature. Different evidence may be offered, or the same evidence offered in a different manner at the next trial which obviates our need to rule on these matters. We do not intend to bind the court's discretion by ruling on these matters now.

2. Medtronic contends that Anderson was not entitled to recover his attorney's fees in this suit. By statute, an employer or employee who loses wage dispute litigation must "pay the cost of such suit." Minn.Stat. § 181.14 (1982).[1] Medtronic construes "cost" to mean "statutory costs," not including attorney's fees.

■ It is well established that attorney's fees are not recoverable in litigation unless there is a specific contract permitting it or a statute authorizing such recovery. *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 79 (Minn.1981). In this case, we have neither a contract nor a statute permitting attorney's fees. The general definition of "costs" does not include attorney's fees. *See* Minn.Stat. § 549.02 (1984).

In 1984, the Minnesota legislature created a new section, 181.145, with analogous recovery provisions for commissioned salespersons. But it differs from section 181.14 in that it expressly provides for payment of attorney's fees by the losing employer only. Section 181.14 requires both a losing employer and a losing employee to pay the costs of litigation. If construed to encompass attorney's fees, a losing employee under section 181.14 could be saddled with the attorney's fees of a prevailing employer. This result would be egregious. It would discourage an employee from bringing suit in the first place. Had the legislature intended to allow attorney's fees under section 181.14, it would have amended the language accordingly. It chose not to. We cannot supply that which the legislature either purposefully omits or inadvertently overlooks. We do not imply attorney's fees into a statute that so easily could have provided for them.

Further, to permit the trial court to redefine "costs" in section 181.14 as including attorney's fees would raise questions under the many statutes which provide for costs and which have been consistently interpreted as excluding attorney's fees.

---

**1.** Amended by Minn.Laws Ch. 446 § 2 (1984) to read "the cost of the suit."

## DECISION

1. The court's improper instruction to the jury on bad faith requires a new trial.

2. The "costs of such suit" under section 181.14 does not include attorney's fees.

Reversed and remanded for new trial.