Robert SEMAN, Respondent,

v.

FIRST STATE BANK OF EDEN PRAIRIE, Appellant.

No. C4–86–676.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Roger A. Nurnberger, Nurnberger & Nurnberger, Minneapolis, for respondent.

Alan L. Kildow, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

PARKER, Judge.

The purchaser of a cashier's check brought an action against the issuing bank for honoring the cashier's check despite a contractual agreement to refuse payment. The bank defended on the ground that the contractual agreement was conditioned upon the purchaser's representation that the cashier's check had been lost, when in fact the check had been given to the named payee. The purchaser also requested attorney's fees and witness fees pursuant to Minn.Stat. § 549.21 (1984). The trial court held for the purchaser on both counts, and the bank appealed. We reverse.

## FACTS

On March 13, 1980, respondent Robert Seman purchased a cashier's check from appellant First State Bank of Eden Prairie (bank). The cashier's check, for $2,500, named Mark Evans as the payee. According to Seman's testimony at trial, Evans, his former employee, was to use the money to buy Seman a Camaro in Nevada. Although Seman testified that he could not remember the exact date he gave Evans the cashier's check, he recalled that it was

"soon" after its issuance; other evidence at trial proved that it was sometime between March 13 and March 18. Subsequently, according to Seman's testimony, he learned that Evans "was a drug addict and was going to use the money to purchase drugs." At that point, even though he had already given Evans the cashier's check, Seman resolved to "stop payment" on it.

On March 19, at 8:30 a.m., Seman went to the bank and told the teller he wanted to stop payment on the cashier's check. He did not tell the bank the true reason. At trial he testified that he could not recall specifically what reason he had given, but admitted he may have told the teller the check was lost.

Upon Seman's execution of the two documents, the bank credited his account for $2,500 and gave him the customer copy of the stop payment request.

Later the same day the cashier's check arrived at the bank through normal banking channels, endorsed by the payee and a subsequent endorser. On the back were stamps from banking institutions in Nevada and California which indicated that the check had been cashed at least one, and possibly two, days earlier. The bank honored the cashier's check and debited Seman's account in the sum of $2,500. The bank wrote to Seman:

> We wish to inform you that cashier's check # 356 for 2,500 dollars which you bought on March 13th, 1980, was not lost in the mail. The check came through our bank on March 19th and was paid. We cannot take the stop payment that was put on the cashier's check as you requested as it was not lost in the mail as specified to us. Your account has been debited for the full amount of 2500.00.

Seman sued the bank for $2,500 plus interest, costs and disbursements for breaching an unconditional agreement to stop payment on the cashier's check. The bank answered, denying that the stop payment agreement was unconditional. The bank further alleged that Seman had no right to order a stop payment on the cashier's check and that the bank had no duty

to honor any such request for stop payment. In its post-trial memorandum the bank argued that the loss of the check was an express condition precedent to the bank's duty to stop payment on the cashier's check. The bank further argued that, because the check had not in fact been lost, the condition failed and the bank's duty to perform did not become due.

The trial court held for Seman, reasoning that (1) it would be anomalous for the bank to promise to not pay the check only if it were never presented for payment; (2) the two forms relied on by the bank were unclear and therefore were to be construed against the bank, which provided them; and (3) the existence of the indemnity bond was evidence that permanent loss of the check was not a condition of the stop-payment agreement.

## ISSUE

When a bank agrees to refuse payment on a cashier's check at the request of a purchaser who represents that the check is lost, is the bank obligated to refuse payment where the purchaser has, in fact, already delivered the cashier's check to the payee?

## DISCUSSION

█ It is somewhat misleading to use the term "stop payment" in reference to a cashier's check transaction. "Stop payment" is a term of art applicable only to personal checks, under Minn.Stat. § 336.4–403 (1984), that gives a bank customer the right to stop payment on his *own* check as an "item payable for his account." A cashier's check is drawn not upon the customer's account but upon the bank itself. The purchaser therefore has no right to stop payment on a cashier's check. *See* Lawrence, "Making Cashier's Checks and Other Bank Checks Cost-Effective: A Plea for Revision of Articles 3 and 4 of the Uniform Commercial Code," 64 Minn.L.Rev. 275, 290–901 (1980); *see also* Brady on Bank Checks, § 20.11 (5th ed. 1979) ("it can be clearly stated that the purchaser or other

person who procures the issuance of a cashier's check by a bank has no power to compel the issuing bank to stop payment").

■ In Minnesota a cashier's check is "merely a bill of exchange * * * and even though negotiable in form * * * it is not the equivalent of money." *Deones v. Zeches*, 212 Minn. 260, 263, 3 N.W.2d 432, 433 (1942). A bank may refuse payment on its own cashier's check if it is not in the hands of a holder in due course. *State Bank of Brooten v. American National Bank of Little Falls*, 266 N.W.2d 496, 499 (Minn. 1978).

■ Although a purchaser may not compel an issuing bank to stop payment on a cashier's check, the bank may voluntarily agree to do so. The agreement between the purchaser and the bank is governed by the principles of contract law.

The issue presented is whether the bank's duty to refuse payment on the cashier's check was conditioned upon the check having been lost. A condition is defined as "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts, § 224 (1981). "Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur." *Id.* at § 225.

■ In certain cases a condition may be implied by the court. "An event may be made a condition either by the agreement of the parties or by a term supplied by the court." *Id.* at § 226. Whether a condition should be implied by the court depends partly upon the parties' intentions. "An intention to make a duty conditional may be manifested by the general nature of an agreement, as well as by specific language. * * * [T]he purpose of the parties is given great weight * * *." *Id.* at Comment a. "When the parties have omitted a term that is essential to a determination of their rights and duties, the court may supply a term which is reasonable in the circumstances * * *." *Id.* at Comment c.

We believe that the nature of this agreement manifests an intention to make the bank's duty conditional, involving, as it does, a cashier's check. A cashier's check, drawn on the bank's account rather than the purchaser's, is viewed as more trustworthy than a personal check. It follows that a cashier's check must be less subject to "stop payment." Seman had a duty to provide a legally sufficient reason to ask the bank to refuse payment on a cashier's check.

Any doubt as to the condition's existence should be resolved in favor of implying it. "In choosing among the reasonable meanings of a promise or agreement or a term thereof, a meaning that serves the public interest is generally preferred." *Id.* at § 207. The public interest in preserving the integrity of cashier's checks supports an interpretation of this agreement as being conditioned upon the check being lost.

■ We note also the contract principle that every party to a contract is bound by a duty of good faith and fair dealing. *Id.* at § 205. It is undisputed that Seman did not reveal to the bank the true circumstances that moved him to attempt to stop payment. The bank, on the other hand, entered the agreement in the good-faith belief that the cashier's check was in danger of falling into the hands of one other than the named payee. Under these circumstances, equity favors the interpretation most favorable to the innocent party.

■ We hold that the bank's contractual duty to refuse payment on the cashier's check was conditioned upon the check having been lost. This was "an event, not certain to occur," which had to occur before the bank's performance became due. This event did not and could not occur; the purchaser himself had delivered the check to the named payee. The bank's duty to refuse payment was discharged.

The bank also appeals the award of attorney's fees pursuant to Minn.Stat. § 549.-21 on the ground that the trial court made no finding of bad faith or knowing assertion of a frivolous defense. The foregoing

reversal on the merits necessitates a reversal on the award of attorney's fees and costs. We therefore do not address the specific issues raised by the bank.

### DECISION

We reverse and order that judgment be entered in favor of the bank; the order for attorney's fees is ordered vacated.

Reversed.