**John K. LASSEN, d/b/a JKL of Minnesota, Appellant,**

v.

**FIRST BANK EDEN PRAIRIE, now known as First Bank National Association, defendant and third-party plaintiff, Respondent,**

v.

**KOPFMANN HOMES, INC., et al., Third Party Defendants.**

No. CX–93–2256.

Court of Appeals of Minnesota.

April 12, 1994.

Review Denied June 29, 1994.

---

Louis Brenner, Sr., Michael J. Orme, and Thomas W. Larkin, Brenner & Glassman, Ltd., Minneapolis, for appellant.

Shannon M. O'Toole, Oppemheimer, Wolff & Donnelly, Minneapolis, for respondent.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and AMUNDSON, JJ.

## OPINION

CRIPPEN, Judge.

Appellant John K. Lassen appeals from the summary judgment entered for respondent First Bank on appellant's claims in breach of contract and conversion under Articles 3 and 4 of the Uniform Commercial Code (U.C.C.), Minn.Stat. §§ 336.3–101 to 336.4–504 (1990), and common law fraud. On cross-motions for summary relief, the trial court ordered judgment for First Bank.

## FACTS

Appellant Lassen is an experienced construction lender. It is his practice before entering into a loan agreement to conduct an independent analysis of the financial condition of the borrower. He conducted such an analysis before making the loans that underlie this litigation.

Appellant had what he characterized as a "continuing business relationship" with Kopfmann Homes, Inc., a builder in the Twin Cities area. Between approximately 1985 and 1990, appellant made a number of construction loans to Kopfmann through an account that appellant maintained with First Bank. In 1986, Kopfmann opened its own account with First Bank, after appellant recommended Kopfmann to First Bank as a good customer.

In early 1990, appellant entered into loan agreements with Kopfmann to construct two houses, one in Orono and one in Eden Prairie. Each loan was secured by a mortgage.

Later that year, appellant purchased five cashier's checks from First Bank and delivered them to Kopfmann. Four of the checks, in an amount totalling $137,492, were made jointly payable to Kopfmann Homes and Chicago Title Insurance Company. The fifth check, in the amount of $27,680, was made jointly payable to Kopfmann Homes and Minnesota Title.

Kopfmann presented each of the cashier's checks to First Bank without the endorse-

ments of the title insurers. First Bank deposited the proceeds into Kopfmann's account. Kopfmann never used the money to pay the subcontractors and subsequently defaulted on the construction loans.

Appellant foreclosed the mortgages by advertisement. He successfully bid the full amount due on the mortgage loans, $311,067.08 on the Orono mortgage and $152,391.68 on the Eden Prairie property, and he acquired title to both properties. He subsequently sold the Orono property for $358,000 and the Eden Prairie property for $120,000.

The parties do not dispute that at the time of the mortgage foreclosures the Orono property was encumbered by mechanics' liens in the amount of $276,032.77. Some of these liens may have been filed as early as January 1988, more than two years prior to appellant's mortgage. In related litigation, *Dura Supreme v. Kopfmann Homes, Inc.*, Court File No. LN–91–7103, decided after the trial court had ordered summary judgment for First Bank, a different trial court determined that $137,492 of the mechanics' liens on the Orono property were senior to appellant's mortgage.

Appellant also made an unrelated construction loan to Kopfmann in the amount of $100,000, secured by a mortgage on a separate property in Eden Prairie. Alan Lyng, a loan officer at First Bank, had alerted appellant to Kopfmann's interest in securing additional financing. Lyng explained that First Bank was unable to provide the funds within the short time frame that Kopfmann required, and suggested that appellant might consider the opportunity to make the loan himself. Appellant alleged that Lyng told him Kopfmann was "a strong company and a good credit risk." Appellant extended the loan and Kopfmann defaulted. Eventually appellant recovered the loan principal through a work-out agreement.

In June 1990, First Bank made an unsecured loan of $22,500 to Kopfmann, and renewed the loan in August. In October, First Bank reduced Kopfmann's credit rating due to "delinquency and overdrafts."

In the fall of 1990, appellant discovered that Kopfmann had deposited the five cash-

ier's checks without the required endorsements of the title insurers. Appellant also discovered that during the spring and summer of 1990, Kopfmann had been running large overdrafts on its account, at times in excess of $100,000. Appellant then filed suit against First Bank.

The trial court granted summary judgment on all counts for First Bank. On his breach of contract and conversion actions, the trial court held that appellant had no standing to assert any claims because only First Bank, as the drawer and drawee of the checks, and Kopfmann and the title insurers, as co-payees, had any enforceable interests in the checks. The trial court also held that even if appellant had otherwise valid claims against the bank in breach of contract or conversion, the claims failed because he did not establish either causation or damages.

Finally, the trial court held that First Bank was not liable in fraud for alerting appellant to the opportunity to lend additional money to Kopfmann. It reasoned that because appellant was an experienced construction lender, he could not have justifiably relied on the bank's statements. Even if appellant had justifiably relied on First Bank's statements to make the loan, his claims for lost investment loan profits were not recoverable at law because they were speculative.

## ISSUES

1. By selling to appellant cashier's checks that were made payable to two joint co-payees but then honoring the checks on the endorsement of only one co-payee, did First Bank breach an enforceable agreement with appellant to pay the checks only in accordance with their written terms?

2. By paying the cashier's checks on missing endorsements, did First Bank wrongfully interfere with appellant's property interests in either the checks or the funds that appellant used to purchase them?

3. Was appellant damaged as a result of First Bank's mishandling of the cashier's checks?

4. Did appellant justifiably rely upon First Bank's failure to disclose information about Kopfmann's account, thereby causing appellant to loan money to Kopfmann at a pecuniary loss?

## ANALYSIS

On appeal from summary judgment, the reviewing court must determine whether (1) there are any material issues of fact and (2) the trial court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). Evidence must be viewed in the light most favorable to the nonmoving party. *Admiral Merchants Motor Freight v. O'Connor & Hannan*, 494 N.W.2d 261, 265 (Minn.1992).

Appellant filed his initial action in breach of contract in 1990 and his amended complaint, containing the conversion and fraud claims, in 1993. In 1992, extensive amendments to Articles 3 and 4 of the Uniform Commercial Code took effect. But appellant's breach of contract and the conversion claims arise from the same operative facts, all of which occurred in 1990. "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of the original pleading." Minn.R.Civ.P. 15.03. Appellant's complaint therefore relates back to and is governed by the laws in effect in 1990.

"No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn.Stat. § 645.21 (1992); *see also Rural American Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 706 (Minn.1992). Nothing in the 1992 amendments or their comments indicate that the legislature intended them to apply retroactively. *Geldert v. American Nat'l Bank*, 506 N.W.2d 22, 27 (Minn.App. 1993), *pet. for rev. denied* (Minn. Nov. 16, 1993). But if an amendment to a statute seeks only to "clarify" the intent of the old statute, then the new statute may be applied retroactively. *Id.* at 707 (citing *Nardini v. Nardini*, 414 N.W.2d 184, 196 (Minn.1987)). We rely upon the amended U.C.C. to the extent that it serves merely to clarify usages

and practices previously recognized by this court.

### 1. Breach of Contract

■ The maker[1] of a negotiable instrument engages in a contract to pay the instrument according to its "tenor," or terms. Minn.Stat. § 336.3–413(1) (1990). An instrument made payable to two or more persons jointly may be negotiated only by all of them. Minn.Stat. § 336.3–116(b) (1990). The remitter[2] of a cashier's check[3] has an enforceable contract with the issuing bank. *See Seman v. First State Bank of Eden Prairie*, 394 N.W.2d 557, 560 (Minn.App.1986) (agreement between purchaser of cashier's check and issuing bank governed by principles of contract law). We recognize and follow the general holding of courts in other jurisdictions that the remitter of a cashier's check has an enforceable contract calling for the issuing bank to pay the instrument according to its terms. *See Jerman v. Bank of America Nat'l Trust & Sav.*, 7 Cal.App.3d 882, 87 Cal.Rptr. 88 (1970) (purchaser of a cashier's check, in return for money paid to bank, acquires promise by bank to pay specified sum to a named payee on presentment of check); *Twellman v. Lindell Trust Co.*, 534 S.W.2d 83 (Mo.App.1976) (by paying on an instrument that is endorsed by forgery, issuing bank breached promise to remitter to pay check only to named payee); *Kosic v. Marine Midland Bank*, 76 A.D.2d 89, 430 N.Y.S.2d 175 (1980) (by paying cashier's checks without necessary endorsements, bank breached duty to remitter).

■ Pursuant to its agreement with appellant, First Bank made each of five cashier's checks jointly payable to the order of Kopfmann and the title insurers. When the bank paid the cashier's checks without the endorsements of the title insurers, it breached its promise to appellant to pay specified sums to the co-payees jointly rather than in the alternative. First Bank has admitted it acted wrongfully in this regard. Because there are no disputed issues of fact, the bank is liable to appellant in breach of contract.

Appellant may seek recovery against First Bank for losses proximately caused by the breach of the remitter's contracts. He argues that the bank should be "absolutely liable" for the face amount of the cashier's checks. But absolute liability applies only to drawee[4] banks for actions in conversion. Minn.Stat. § 336.3–419(2) (1990); Minn.Stat.

1. The "issuer" or "maker" of an instrument is the person who makes or draws the instrument for issue. Minn.Stat. § 336.3–105(c) (1992). "Issue" means the first delivery of an instrument to a holder or a remitter. Minn.Stat. § 336.3–102(1)(a) (1990). The revised statute applies the term more broadly to include the first delivery to anyone by the drawer or maker for the purpose of giving rights on the instrument. Minn.Stat. § 336.3–105(c) (1992); Minn.Stat.Ann. § 336.3–105(c) U.C.C. cmt. 1, 3 (West Supp.1994).

2. A remitter is a person who purchases an instrument from its issuer if the instrument is payable to an identified person other than the purchaser. Minn.Stat. § 336.3–103(a)(11) (1992). This term was not defined before the code was revised in 1992, but the new definition is consistent with usage in case law. *See, e.g., Wohlrabe v. Pownell*, 307 N.W.2d 478, 480 (Minn.1981); *Concord Coop v. Security State Bank of Claremont*, 432 N.W.2d 195, 198–99 (Minn.App.1988).

3. Under the U.C.C. prior to the 1992 amendments, a cashier's check was a note, a type of negotiable instrument. Minn.Stat. § 336.3–104(2)(d) (1990) (negotiable instruments include notes, if the note is a promise other than a certificate of deposit); § 336.3–118(a) (1990) (a draft drawn on the drawer is effective as a note); *see also* Minn.Stat.Ann. § 336.3–103 U.C.C. cmt. 2 (West Supp.1994). Although a cashier's check is a promise by the issuing bank to pay (that is, as a promissory note) rather than an order to pay, a cashier's check is in the form of a check and normally is referred to as one. Minn.Stat. Ann. § 336.3–103, U.C.C. cmt. 2 (West Supp. 1994).

4. A "drawer" is a person who signs or is identified in a draft as the one ordering payment. Minn.Stat. § 336.3–103(a)(3) (1992). A "drawee" is the person ordered in a draft to make payment. Minn.Stat. § 336.3–103(a)(2) (1992). A bank that issues a cashier's check is both drawer and drawee. Minn.Stat. § 336.3–104(g) (1992). These definitions of drawer and drawee, first stated in the 1992 amendments to the U.C.C., are consistent with usage in case law. *See generally, E.S.P., Inc. v. Midway Nat. Bank of St. Paul*, 447 N.W.2d 882 (Minn.1989); *Denn v. First State Bank of Spring Lake Park*, 316 N.W.2d 532 (Minn.1982); *Geldert v. American Nat. Bank*, 506 N.W.2d 22 (Minn.App.1993), *pet. for rev. denied* (Minn. Nov. 16, 1993); *Acrometal Co. v. First American Bank*, 475 N.W.2d 487 (Minn. App.1991), *pet. for rev. denied* (Minn. Oct. 31, 1991).

Ann. § 336.3–419(2) Minn. code cmt. and U.C.C. cmt. 4 (West 1966).

■ Ordinarily, the measure of damages for the failure to exercise ordinary care in handling an instrument is the amount of loss actually caused by the breach and suffered by the plaintiff. Minn.Stat. § 336.4–103(5) (1990); Minn.Stat.Ann. § 336.4–103(5) U.C.C. cmt. 6 (West 1966); *Andrews v. Northwestern Nat'l Bank*, 107 Minn. 196, 117 N.W. 621 (1908), *aff'd* 107 Minn. 196, 122 N.W. 499 (1908); *see also* Minn.Stat. § 336.4–103(e) (1992); Minn.Stat.Ann. § 336.4–103(e) U.C.C. cmt. 6 (West Supp.1994). This rule is consistent with general principles of contract law, which provide that damages for breach of contract are limited to those flowing from the breach, unless, in exceptional circumstances, the breach constitutes or is accompanied by an independent tort.[5] *Wild v. Rariq*, 302 Minn. 419, 440, 234 N.W.2d 775, 789 (1975), *cert. denied*, 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976).

Unless the defendant acted in bad faith, the maximum recovery for mishandling an instrument is the amount of the item, reduced by any amount which would not have been payable even in the absence of the error. Minn.Stat. § 336.4–103(5) (1990). But if bad faith is established, then damages in excess of the value of the instrument may be recovered as well. *Id.; see also* Minn. Stat.Ann. § 336.4–103(5) Minn. code cmt. (1966) (citing Minnesota cases).

■ In general, " '[b]ad faith' means a refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties, but rather by some ulterior motive." *Anderson v. Medtronic, Inc.*, 365 N.W.2d 364, 366 (Minn.App. 1985) (quoting trial court's jury instruction). From the fact that Kopfmann was running large overdrafts, appellant infers that First Bank was motivated to swindle appellant out of the cashier's checks so that Kopfmann could use them to pay the bank what he owed on his account. But suspicious circumstances alone are insufficient to prove that an instrument was handled in bad faith. *See Wohlrabe v. Pownell*, 307 N.W.2d 478, 483 (Minn.1981). Appellant has failed to establish his right to claim damages for breach of contract in excess of the face value of the cashier's checks.

Appellant claims he suffered two different kinds of losses as a result of First Bank's actions: lost profits from the sale of the Orono and Eden Prairie properties, and unsatisfied mechanics' liens that encumbered his title to the Orono property. He cannot recover for lost profits, but he has introduced evidence that would support his recovery for the mechanics' liens.

■ The basis of appellant's claim for lost profits is his allegation that, had the title insurers been able to control disbursement of the proceeds of the cashier's checks, there would have been sufficient funds available to close on the Orono and Eden Prairie properties at a profit. In a sense, appellant seeks a type of deficiency judgment, an amount equal to the difference between the value he received at the foreclosure sales and the value he should have been able to earn. Even assuming that he could show that First Bank's actions caused Kopfmann to default on the construction loans, appellant's election of the remedy of foreclosure by advertisement precludes him from asserting a claim inconsistent with that remedy. *See Kooda Bros. Constr. v. United Fed. Sav. & Loan*, 400 N.W.2d 407, 409 (Minn.App.1987) (citing *Bond v. Charlson*, 374 N.W.2d 423, 431 (Minn.1985)); *see also* Minn.Stat. § 582.30, subd. 2 (1990) (prohibiting deficiency judgments after mortgage foreclosure by advertisement).

■ In contrast, appellant's mechanics liens claim is fully consistent with the foreclosure remedy. He had a statutory right to capture the full value of the properties to the extent that they secured the mortgage debt. *See* Minn.Stat. § 580.09 (1990) (proceeds of mortgage foreclosure sale applied against amount due on secured debt).

---

5. Minnesota does not recognize a cause of action in tort for negligent breach of contract. *Lampert Lumber Co. v. Joyce*, 405 N.W.2d 423, 424 (Minn. 1987) (citing *Lesmeister v. Dilly*, 330 N.W.2d 95, 102 (Minn.1983)).

The evidence before the trial court showed that appellant designated the title insurers as the disbursing agents for the projects to ensure that Kopfmann's subcontractors and suppliers would be paid. The title insurers were named co-payees of the cashier's checks to enable them to perform their duties. The record would support a finding that but for the fact that First Bank permitted Kopfmann to negotiate the cashier's checks without the endorsement of Chicago Title, the mechanics' liens on the Orono property senior to appellant's mortgage would have been satisfied prior to foreclosure and would not have encumbered appellant's security interest.

■ To prove his damages, appellant must demonstrate that the harm resulting from paying the cashier's checks on missing endorsements was foreseeable. Minnesota follows the rule of *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854), which holds that damages recoverable in contract actions are those arising naturally from the breach or those which can reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of that breach. *Lesmeister v. Dilly*, 330 N.W.2d 95, 103 (Minn.1983); *see also Franklin Mfg. Co. v. Union Pac. R.R. Co.*, 311 Minn. 296, 298, 248 N.W.2d 324, 325 (1976) (damages must either have been within contemplation of parties at time contract made or so likely to result from breach that they can reasonably be said to have been foreseen). Whether the damages were contemplated or reasonably foreseeable at the time the contract was made is a question of fact. *Franklin*, 311 Minn. at 298–99, 248 N.W.2d at 325–26.

■ Appellant may prove damages only insofar as they relate to the Orono property. He conceded that there were no mechanics' liens on the Eden Prairie property senior to

his mortgage, and he presented no evidence to the trial court of other recoverable losses on the Eden Prairie property. On remand, appellant must show that First Bank knew or reasonably should have foreseen that the proceeds of the construction loan for the Orono property might not be used to satisfy senior liens if the cashier's checks were cashed without Chicago Title's endorsement.

## 2. Conversion

■ A bank may be liable in conversion for paying on a forged endorsement. Minn. Stat. § 336.3–419(1)(c) (1990); *E.S.P., Inc. v. Midway Nat. Bank of St. Paul*, 447 N.W.2d 882, 883 (Minn.1989). The term "forged" endorsement can also mean an incomplete endorsement. *Geldert*, 506 N.W.2d at 22, 27 n. 8. But in creating a cause of action in conversion for paying on a missing endorsement, the U.C.C. has only added to and not replaced the common law elements of conversion. Where those basic elements are not satisfied, the plaintiff's claim must fail. *See* Minn.Stat. § 336.1–103 (1990) (permitting ordinary common law defenses against breach of contract actions under U.C.C.).

■ The elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest. *Larson v. Archer–Daniels–Midland Co.*, 226 Minn. 315, 317, 32 N.W.2d 649, 650 (1948); *Mertes v. Estate of E.L. King*, 501 N.W.2d 660, 665 (Minn.App. 1993). A plaintiff's lack of an enforceable interest in the subject property is a complete defense against conversion.

■ A negotiable instrument is the property of the holder.[6] Minn.Stat.Ann. § 336.3–419 U.C.C. cmt. 2 (West 1966). Lassen was the first holder of the cashier's checks; they were his property after he purchased them from First Bank.[7] But when the cashier's

---

6. A holder is a person in possession of an instrument drawn, issued, or endorsed to him or to his order. Minn.Stat. § 336.1–201(20) (1990).

7. Appellant argues that his cause of action in conversion may lie in the fact that he never actually saw the cashier's checks before Kopfmann negotiated them. Apparently First Bank issued the checks to appellant without physically transferring them into his possession.

Appellant appears to argue that because he never actually had the checks in hand, First Bank simply transferred funds directly from appellant's account to Kopfmann's account. But by definition, a cashier's check is a check that a bank draws on itself, not on the account of a depositor. First Bank did not convert funds from appellant's account.

checks were delivered, Kopfmann and the title insurers became the next holders in due course.[8] Appellant no longer had enforceable property rights in the checks and therefore had no cognizable conversion claims when First Bank mishandled them.

### 3. Fraud

■ To prove intentional misrepresentation, the plaintiff must show that the defendant intended to induce plaintiff's conduct and that the plaintiff suffered damage in reliance on the defendant's false or misleading representations. *M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 289 (Minn.1992).

■ Appellant presented no evidence that First Bank intended to induce him to make the $100,000 loan to Kopfmann. Apparently his only argument was that Kopfmann consistently had large overdrafts on his checking account, thereby inferring that First Bank solicited the loan on Kopfmann's behalf to help him pay off the overdrafts. But appellant never made any showing that Kopfmann deposited the proceeds of the loan into his account at First Bank, or that First Bank was even involved in the transaction.

Justifiable reliance must be established with reference to the specific intelligence and experience of the aggrieved party. *Murphy v. Country House, Inc.,* 307 Minn. 344, 351, 240 N.W.2d 507, 512 (1976). To the extent that a knowledgeable party conducts his own factual investigation, he may not rely upon claims made by another party. *See Davis v. Re–Trac Mfg.,* 276 Minn. 116, 118, 149 N.W.2d 37, 39 (1967) (citing *Lack Indus. Inc. v. Ralston Purina Co.,* 327 F.2d 266 (8th Cir.1964)).

Appellant admitted that before he spoke with First Bank, he had examined Kopfmann's financial statements and tax returns and found that those documents indicated Kopfmann was credit worthy. The record contains no evidence that First Bank ever made a similar investigation. In fact,

the only evidence before the trial court suggested just the contrary: at roughly the same time that First Bank alerted appellant to the opportunity to lend money to Kopfmann, the bank made its own bad loan to Kopfmann. It was appellant, not First Bank, who had enjoyed a continuing business relationship with Kopfmann and who was in a superior position to evaluate the risks of making another construction loan.

Appellant also was unable to sustain an action in fraud because he suffered no actionable damages. He admits that he successfully recovered the loan principal through a work-out agreement.

### 4. Lost Profits

■ Appellant claims that First Bank should be liable to him for his investment profits lost on all three failed loans to Kopfmann, because he was denied the opportunity to use the money that he lent to Kopfmann to make construction loans to other willing borrowers. But appellant could only speculate on what his profits might have been otherwise. Speculative, remote, or conjectural damages are not recoverable at law. *Cardinal Consulting Co. v. Circo Resorts, Inc.,* 297 N.W.2d 260, 267 (Minn.1980).

### DECISION

Judgment for First Bank on the breach of contract claim is reversed and remanded. On remand, the trial court must determine whether First Bank's breach of contract caused appellant to suffer recoverable damages. Judgment for First Bank on the conversion and fraud claims is affirmed.

**Affirmed in part, reversed in part and remanded.**

---

8. A "holder in due course" is a person who takes an instrument for value and in good faith, and without notice that the instrument is not freely negotiable. Minn.Stat. § 336.3–302(1) (1990).