*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0370**

Swanny of Hugo, Inc.,
d/b/a Carpenter's Steak House, et al.,
Respondents,

vs.

Integrity Mutual Insurance Company,
Appellant.

**Filed December 28, 2015
Affirmed
Ross, Judge**

Washington County District Court
File No. 82-CV-12-347

Britton D. Weimer, Jones Satre & Weimer, PLLC, Bloomington, Minnesota (for appellant)

Adina R. Bergstrom, Brenda M. Sauro, Kyle S. Willems, Sauro & Bergstrom, PLLC, Oakdale, Minnesota; and

Lucas D. Wilson, Wilson Law, LLC, Minneapolis, Minnesota (for respondent Swanny of Hugo, Inc., d/b/a Carpenter's Steak House)

        Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**ROSS**, Judge

After fire destroyed Carpenter's Steak House and Integrity Mutual Insurance Company denied business-income coverage, a jury found that the insurer breached the insurance policy and the district court rejected the restaurant's statutory bad-faith denial-of-benefits cost-recovery claim under Minnesota Statutes section 604.18 (2014). The insurer appeals the judgment on the insurance-contract claim, and the restaurant appeals the district court's denial of its statutory costs claim. We are satisfied that the district court either rightly decided the legal issues or that any error was harmless, and we affirm.

## FACTS

In early January 2010 Carpenter's Steak House in Hugo, Minnesota, was destroyed by fire. Catherine Anderson solely owns Swanny of Hugo, Inc., which in turn solely owns the restaurant, and her son, Michael Anderson, managed the restaurant. Integrity Mutual Insurance Company insured the restaurant. The Swanny–Integrity policy covered various losses: business personal property; debris and pollutant removal; computers; and structure. The policy also provided limitless coverage for the loss of business income (BI) over a 12-month restoration period.

Integrity's claims representative Bree Sweetack called Swanny to discuss the fire and loss. Sweetack immediately noted that the building was a total loss. Soon Catherine Anderson met with Integrity's claims representative Chad Bodenheimer. Bodenheimer informed Anderson that the restaurant was a total loss and that Swanny would be covered by the policy's BI-loss provisions. Integrity allocated a payment reserve of over $50,000

2

for BI, and it also allocated the maximum reserves for the structure and the other coverage categories.

Swanny submitted a proof-of-loss statement to Integrity on January 28, 2010, for the restaurant structure. Six weeks later Integrity sent a letter confirming that it received Swanny's statement and expressly rejecting any statements declaring the value of the loss. The letter also informed Swanny that it was holding payment until it completed its fire investigation.

Swanny sent Integrity a claim for BI based on a calculation of $164,772 prepared by public adjustor Paul Norcia. Integrity retained accountant Christian Fox to review Swanny's BI claim. Integrity's investigation into possible arson and fraud lasted more than 100 days. During the investigation period, Swanny attempted unsuccessfully to open another restaurant. Although Swanny had successfully negotiated a lease, it lacked the funds to complete the deal. Integrity eventually made policy-limit payments for damages to the restaurant structure, business personal property, computer, and for the cost of debris and pollutant removal. But it paid Swanny nothing for BI after Fox finished his report in December 2010, concluding that Swanny had no BI loss.

Swanny sued Integrity, claiming that Integrity breached the policy by denying BI coverage and by failing to timely cover the other categories. A jury found that Integrity breached the policy by failing to timely pay coverages and by refusing BI coverage altogether. It awarded Swanny $275,000 in damages for BI loss and $859,500 in consequential damages.

Integrity moved for a new trial and judgment as a matter of law. The district court took the motions under advisement and conducted a hearing on Swanny's statutory claim of bad-faith claim-denial. After the hearing the district court denied Integrity's motions and rejected Swanny's statutory claim. It deemed Integrity's arguments unpersuasive and reasoned that Swanny had not shown that Integrity lacked a reasonable basis for denying the BI claim.

Both parties challenge the district court's decision on appeal.

## D E C I S I O N

Integrity asserts that (1) consequential damages are not permissible here as a matter of law; (2) the district court misinterpreted the jury's verdict and double counted the BI award; (3) preverdict interest on the consequential damages award should have been calculated from the date the damages were incurred rather than the date the complaint was served; and (4) Swanny failed to produce sufficient evidence to support the award of BI damages. We will address each of these issues before turning to Swanny's related appeal challenging the denial of its bad-faith claim.

## I

Integrity challenges the district court's decision denying its motion for judgment as a matter of law. The denial of a motion for judgment as a matter of law presents a legal question, which we review de novo. *Gilbertson v. Leininger*, 599 N.W.2d 127, 130 (Minn. 1999). Integrity specifically maintains that the consequential-damages award is in error, and it rests on four arguments: the holding of *Olson v. Rugloski*, 277 N.W.2d 385 (Minn. 1979), contradicts the award; consequential damages were not reasonably foreseeable at

4

the time the parties entered the contract; Swanny failed to specifically plead consequential damages as required by Minnesota Rule of Civil Procedure 9.07; and the district court improperly permitted Swanny to present a claim for negligent claims-handling. We address each argument.

***The rule in* Olson *allows for consequential damages in this case.***

Integrity presents various arguments based on *Olson*, which held that consequential damages may arise from the breach of an insurance contract. Integrity first argues that *Olson* limits consequential damages based on the breach of an insurance contract to bad-faith refusal to pay. It asserts that bad faith in the context of breach of an insurance contract means a "willful, wanton, and malicious" refusal to make payment. Integrity reads *Olson* too restrictively. The *Olson* opinion twice includes the phrase "willful, wanton, and malicious," and neither is in the holding or reasoning. The phrase first appears in the beginning of the opinion as an introduction to the case's procedural history. *Id.* at 386. And it appears again in a summary of the trial court's findings. *Id.* at 387. We do not agree that these references condition the award on a finding of the insurer's willful, wanton, and malicious motives. We look instead to *Olson*'s expressly stated holding for the rule of law that the supreme court applied in that case and that we will apply:

> The insurer is obligated to pay when the insured suffers a loss covered by the policy. When the insurer refuses to pay or unreasonably delays payment of an undisputed amount, it breaches the contract and is liable for the loss that naturally and proximately flows from the breach.

*Id.* at 387–88. If the *Olson* court were relying on the "willful, wanton, and malicious" nature of the insurer's actions, rather than on its "unreasonabl[eness]," it would not have

5

so broadly stated its proposition of law. Given that the supreme court declared that the award is suited to cover unreasonable delays, not willful or malicious delays, we see no bar for the award here.

We are not persuaded otherwise by Integrity's reliance on *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622 (Minn. 2012). Integrity highlights the following footnote in *Mattson Ridge*:

> Although unnecessary to our decision here, we note that it appears that [the insurer] did not exhibit the type of "willful, wanton, and malicious" behavior present in *Olson*: an unreasonable failure to pay an undisputed amount of benefits to the insured.

*Id.* at 630 n.2. The *Mattson Ridge* footnote does not declare that a finding of willful, wanton, and malicious behavior is necessary for an award for damages arising from delayed payment. It instead inferred that the unreasonable refusal to pay the undisputed amount in *Olson* was itself willful, wanton, and malicious behavior. Given the finding that Integrity unreasonably delayed the payment here, the *Mattson Ridge* footnote does not advance its position.

Integrity also argues that *Olson* requires that an insured must prove that the insurer conditioned payment on an unreasonable demand before becoming eligible for consequential damages. It is true that *Olson* involved an unreasonable demand by the insurer, but again, the rule articulated and applied in that case is not so narrowly presented. *See Olson*, 277 N.W.2d at 387–88. Integrity cites no case applying *Olson* in this narrow fashion, and we are aware of none.

6

Integrity next argues that *Olson* does not allow for consequential damages in this case because the coverage amount was disputed. Integrity correctly observes that *Olson* declares that the award may be appropriate "[w]hen the insurer refuses to pay or unreasonably delays payment *of an undisputed amount*." *Id*. (emphasis added). This is a close issue, but we are satisfied that the jury was presented with sufficient evidence to support its determination under this standard. Immediately after the fire, Integrity claims adjustor Bodenheimer informed Swanny that the building was a total loss and that Swanny would be covered under the BI provision of the policy. After Swanny submitted a proof-of-loss statement to Integrity in January 2010, it took six weeks for Integrity even to acknowledge it received the statement. Although Integrity announced that it would withhold payments until after it completed its investigation, the jury heard from Swanny's expert that no fraud indicators were ever present and that it was "very clear" as early as mid-January 2010 that the coverage would reach the policy limits. There was sufficient evidence from which the jury could find that the coverage amounts were not effectively or genuinely in dispute for a significant majority of the payment-delay period.

***Consequential damages were foreseeable at the time the contract was made.***

Integrity argues that consequential damages are not available here because the damages were not foreseeable at the time of contracting. It has been long established that Minnesota follows the rule of *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854). *See Paine v. Sherwood*, 21 Minn. 225, 232 (1875) (adopting the *Hadley* rule). This rule provides that consequential damages for breach-of-contract claims are generally prohibited unless the damages are "those arising naturally from the breach or those which can

7

reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of that breach." *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. App. 1994). In other words, consequential damages are available only if they were contemplated or "reasonably foreseeable." *Id.* Whether damages were reasonably foreseeable when the contract was made is a question of fact. *Id.*

The jury was properly instructed as to this foreseeability requirement. Because the jury awarded consequential damages, it necessarily determined that the damages were foreseeable when the parties entered the contract. Viewing the evidence in the light most favorable to the verdict, we will not disturb the jury's finding unless no reasonable mind would find as the jury did. *Reedon of Faribault, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.*, 418 N.W.2d 488, 491 (Minn. 1988).

Swanny presented enough evidence of foreseeability to sustain the jury's verdict. Michael Anderson testified that when the policy began he believed that the BI coverage would protect the flow of the business following a catastrophic event. Insurance expert Elliott Flood opined that an insurance company would have known that failure to make timely payments could prevent a business from reopening. Integrity's assertion that it lacked prior knowledge of Swanny's specific financial vulnerability is also unavailing because the jury can hold a defendant liable for damages that a reasonable person *ought* to have foreseen as likely to result from a breach. *Franklin Mfg. Co. v. Union Pac. R.R. Co.*, 311 Minn. 296, 298, 248 N.W.2d 324, 325 (1976). We are satisfied that the damages awarded here arise naturally from the breach or can "reasonably be supposed to have been contemplated by the parties when making the contract." *Lassen*, 514 N.W.2d at 838.

8

***Swanny specifically pleaded consequential damages as required by Minnesota Rule of Civil Procedure 9.07.***

Integrity argues that Swanny failed to specifically plead consequential damages. Whether specificity is required is a question of law that we review de novo. *DeRosier v. Util. Sys. of Am., Inc.*, 780 N.W.2d 1, 4 (Minn. App. 2010). Pleadings generally require only "a short and plain statement of the claim" and "a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01. But special damages must be "specifically stated." Minn. R. Civ. P. 9.07. Special damages are the natural but not necessary result of a wrongful act. *Smith v. Altier*, 184 Minn. 299, 300, 238 N.W. 479, 479 (1931). Consequential damages are commonly called special damages and therefore must be pleaded according to rule 9.07. *See DeRosier*, 780 N.W.2d at 4. The purpose of the special pleading rule is to provide the opposing party with notice of matters that may not necessarily be known to it. *See Smith*, 184 Minn. at 300–301, 238 N.W. at 479–80. In the context of consequential damages for breach of contract, the plaintiff must plead facts that the parties knew the risk of consequential damages at the time the contract was formed. *Liljengren Furniture & Lumber Co. v. Mead*, 42 Minn. 420, 422, 44 N.W. 306, 307 (1890).

Integrity argues that Swanny's pleadings do not satisfy rule 9.07. Swanny's complaint defeats the argument. The complaint expressly states that Swanny was seeking "additional foreseeable consequential damages" arising from Integrity's failure to make timely payment. The complaint includes other particulars that defeat Integrity's argument:

> 20.     As a result of Integrity's intentional failure and refusal to make payments under the Policy's Business Income and Extra Expense provisions, the Plaintiffs have incurred debt, were unable to keep their restaurant business in operation, and

9

have suffered unnecessary humiliation and loss—*all harms that Plaintiffs intended to avoid, in the event of a catastrophic event, when they purchased the Policy from Integrity.* . . .

. . . .

22.     *Defendant Integrity was aware that Plaintiffs used the Premises, insured under the above-described Policy, as a commercial property, and that Plaintiffs would be damaged by any delays or refusal in payments for their losses*, thereby preventing Plaintiffs from restoring or replacing the Premises to its intended use and value as a restaurant.

(emphasis added).

The complaint notified Integrity that Swanny sought consequential damages, satisfying rule 9.07.

***Swanny did not try a negligent claims-handling case.***

Integrity argues that the district court improperly allowed Swanny to try a negligent claims-handling claim. Minnesota does not recognize a private cause of action for negligent claims-handling under the Unfair Claims Practices Act. *Morris v. Am. Family Mut. Ins. Co.*, 386 N.W.2d 233, 238 (Minn. 1986). At the outset of trial, the district court ruled that Swanny's experts were prohibited from mentioning specific provisions of the act and that claims-handling practices would be admissible for the limited purpose of showing that Integrity's actions fell outside industry custom. Swanny followed the court's ruling. Swanny never argued for damages based on the act or negligent claims-handling. Integrity's argument on appeal is unsupported.

10

**II**

Integrity argues that the district court erroneously interpreted the jury's special verdict form and double counted the award for BI damages. We will liberally construe a special verdict form, giving effect to the intention of the jury and harmonizing all findings if we can. *Daly v. McFarland*, 812 N.W.2d 113, 125 (Minn. 2012). A district court faced with a potentially inconsistent special verdict may either exercise its own interpretive powers or, if it concludes that the jury's conclusion must be altered as a matter of law, it may partially direct a verdict. *Id.* We will give "broad discretion to any interpretive choice made by the district court." *Id.* at 126. And "[i]f the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed." *Id.* (quotation omitted). We are satisfied that the district court reconciled the verdict answers on a reasonable theory.

The jury's responses to the special verdict form were, in relevant part, as follows:

6. Did Defendant Integrity's denial of business income loss coverage to Plaintiffs or the timing of that decision breach the insurance contract?

   Answer: Yes

7. Did Plaintiffs sustain any business income loss during the period of restoration?

   Answer: Yes

8. If you answered "Yes" to Question 7, then answer this question: How much business income loss did Plaintiffs sustain during the period of restoration?

   Answer: $275,000

11

9. If you answered "yes" to any of Questions 1, 2, 3, 4, 5, or 6, then answer this question: Was/were Defendant Integrity's breach(es) of the insurance contract a direct cause of damage to Plaintiffs?

Answer: Yes

10. If you answered "Yes" to Question 9, then answer this question: What amount of money will fairly and adequately compensate Plaintiffs for damage directly caused by Defendant Integrity's breach(es) of the insurance contract?

Answer: $859,500

The district court interpreted the jury's $275,000 BI award to be separate from the $859,500 award. It therefore saw the $859,500 award as representing solely consequential damages. So it added the awards together for a total of $1,134,500.

Integrity argues that the jury intended the $859,500 amount to constitute its entire award, of which, the $275,000 BI award was merely a part. It maintains that by adding the two figures together the district court effectively double counted the BI award. The argument is not without merit, but we do not consider it to represent the only reasonable interpretation. Question 10 does not clearly request the jurors to provide a total amount. In interpreting the jury's answers, the district court reasoned that, throughout the litigation, "Integrity agreed with [Swanny] that consequential damages and BI loss were separate and distinct, and made various legal arguments grounded in that concept." The jury was presented evidence and argument relating to two distinct types of damages, lending support to the district court's interpretive rationale. We recognize that the district court's explanation is not the only reasonable one and that Integrity's argument has some weight.

12

But because the district court expressed and relied on a reasonable interpretive theory to explain the verdict, its conclusion does not reflect an abuse of discretion.

**III**

Integrity argues that the district court erred by granting preverdict interest on the consequential damages award from the date the complaint was served rather than the date the damages were incurred. This issue requires us to interpret a statute, triggering our de novo review. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011). The legislature has provided a statutory right to preverdict interest on money judgments. Minn. Stat. § 549.09 (Supp. 2015). The general rule is that "preverdict . . . interest on pecuniary damages shall be computed . . . from the time of the commencement of the action." *Id.*, subd. 1(b). An exception to the rule requires interest on special damages to accrue from the time those damages were incurred if that time was later than the commencement of the action. *Id.* This exception applies if either party served a written settlement offer. *Id.*

Integrity made a written settlement offer in May 2013. The exception for special damages therefore applies, and the preverdict interest should accrue from the date the damages were incurred if later than the commencement of the action. Integrity is therefore correct that the district court erred by not considering the special-damages exception in its order granting entry of preverdict interest. Nevertheless, this error was harmless. Our review of the record informs us that any consequential damages must have accrued before the initial complaint was filed on December 30, 2011. We therefore affirm the entry of preverdict interest accruing from that date.

13

## IV

Integrity argues that Swanny failed to introduce evidence of BI damages sufficient to sustain the verdict. We will not disturb a verdict so long as it is reasonably supported by competent evidence. *Gillespie v. Klun*, 406 N.W.2d 547, 554–55 (Minn. App. 1987), *review denied* (Minn. Aug. 19, 1987). The policy here defines BI as: (1) net profit or loss that would have been earned or incurred if no physical loss or damage occurred; and (2) continuing normal operating expenses incurred, including payroll. The parties contested at trial how the policy calculates BI. Swanny relied on the testimony of two experts to support its theory. Public adjustor Norcia estimated that the BI loss could reach $164,772. Flood testified that even under Integrity expert Fox's methodology BI loss would result. Although the jury awarded $275,000 in BI damages (a figure above Norcia's estimated amount), Norcia also testified that his calculation was "conservative," thus giving the jury a basis for awarding an amount above his estimate. Integrity also does not attempt to argue that this amount is excessive and could only be the product of passion or prejudice, *see Flanagan v. Lindberg*, 404 N.W.2d 799, 800 (Minn. 1987), nor do we believe that to be the case here. We therefore find the verdict to be reasonably supported by the evidence.

## V

In its related appeal, Swanny challenges the district court's denial of its posttrial bad-faith claim. A district court may award taxable costs for the bad-faith denial of first-party insurance claims. Minn. Stat. § 604.18. To be eligible for this remedy, the insured must establish two elements: that the insurer lacked a reasonable basis to deny the benefits

14

and either that the insurer knew about the lack of a reasonable basis or it recklessly disregarded the lack of reasonable basis to deny the benefits. *Id.*, subd. 2(a). There is no Minnesota caselaw defining reasonableness under the statute, but a majority of states with similar bad-faith statutes have adopted a "fairly debatable" standard for evaluating an insurer's denial of benefits. *Friedberg v. Chubb & Son, Inc.*, 800 F. Supp. 2d 1020, 1025 n.1 (D. Minn. 2011).

The district court determined that the first prong of section 604.18 was not satisfied here because the BI claim was fairly debatable and Integrity had a reasonable basis for denying the claim for that category of loss. Reasonableness generally is a question of fact. *See Mullins v. Churchill*, 616 N.W.2d 764, 768 (Minn. App. 2000), *review denied* (Minn. Nov. 15, 2000). We review a district court's fact findings for clear error. *Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008). Findings of fact are clearly erroneous if they produce the firm conviction on appeal that a mistake was made. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999). Swanny argues unpersuasively that the district court erred because it failed to consider the entirety of the evidence. The district court found the BI claim to be fairly debatable based on the different opinions reached by the parties' experts as to how the BI provision functions, the different opinions as to what sales data should be used to calculate BI loss, and the conflicting results in the calculation of BI loss. It also found that Integrity had a reasonable basis to deny the claim because its understanding of the policy language differed from Swanny's and because Fox's analysis indicated that Swanny was not entitled to BI payments. We are satisfied that the district court adequately considered the evidence before reaching these conclusions. And because

15

there is reasonable evidence supporting the district court's findings, the court did not clearly err by denying Swanny's bad-faith claim. We observe that other states with bad-faith statutes similar to Minnesota's require the insurer to conduct a proper investigation to have a reasonable basis for denying a claim. *See, e.g.*, *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978). But because the district court rightly concluded that Swanny failed to show that the investigation here was improper, we do not consider whether section 604.18 imposes an investigation requirement.

**Affirmed.**